## Vulcanite Paving Company, Appellant, v. Philadelphia.

*Contracts—Construction—Consideration of the whole instrument—Municipal contract—Paving—Assessment bills.*

1. It is a settled rule of interpretation, to which there is no exception, that if possible a contract must be so interpreted as to give effect to all of its provisions. The construction of an agreement, which gives effect to the manifest intention of the parties and is not clearly at variance with the language of the whole instrument, should be adopted.

2. The purpose in construing all contracts is to ascertain the intention of the parties, and when that is done by a general survey of the whole writing such intention cannot be defeated by the language in any one part of the instrument which standing alone, would lead to a contrary or different conclusion.

3. Where a municipal contract for paving provides in express terms that the city "shall pay for paving the intersection of cross streets and in front of unassessable property in warrants," and that for all other work the contractor should receive assessment bills on abutting property, which bills should be accepted as cash without recourse to the city if the bills should prove to be invalid, the acceptance by the contractor, under a misapprehension both by himself and the city, of assessment bills against nonassessable railroad property, will not preclude the contractor from collecting from the city in cash the amount represented by such assessment bills.

Argued January 10, 1913. Appeal, No. 351, Jan. T., 1912, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1911, No. 409, for defendant non obstante veredicto in case of Vulcanite Paving Company

*v.* Philadelphia.   Before FELL, C. J., BROWN, MESTRE-
ZAT, POTTER, STEWART and MOSCHZISKER, JJ.   Reversed.

Assumpsit for paving.   Before AUDENRIED, J.

The facts are stated in the opinion of the Supreme
Court.

At the trial there was a verdict for plaintiff for $2,-
242.53.   Subsequently the court entered judgment for
defendant non obstante veredicto.

*Error assigned* was in entering judgment for defend-
ant non obstante veredicto.

*Walter Biddle Saul,* with him *E. O. Michener,* for ap-
pellant.—The exact point raised in this appeal has been
decided in Barber Asphalt Paving Co. v. Harrisburg,
64 Fed. Repr. 283, which decision has been approved by
this court, notably in the case of Gable v. Altoona, 200
Pa. 15.

*Paul Reilly,* Assistant City Solicitor, with him *Thomas
Boylan* and *Michael J. Ryan,* City Solicitor, for appel-
lee.—Under the authority of Horter v. Philadelphia, 13
W. N. C. 40; Dickinson v. Philadelphia, 14 W. N. C. 367,
and Dechert v. Commonwealth, 113 Pa. 229, the accept-
ance of the bills fixed the rights of the parties.

OPINION BY MR. JUSTICE MESTREZAT, March 17, 1913:

This was an action of assumpsit brought in the court
below by the plaintiff company to recover from the City
of Philadelphia the balance due under a contract made
in 1902 for the paving of Allegheny avenue from Second
to Fifth street.   The sum claimed is the amount of two
assessment bills delivered to the plaintiff by the city.
There was a verdict for the plaintiff which, on motion
of counsel, was set aside and judgment entered for the
defendant notwithstanding the verdict.

The contract is dated November 26, 1902, and the

portions, material to the issue in this case, are as follows: "The said city of Philadelphia shall be at no expense for said paving, except for intersections and in front of unassessable property.......The said city of Philadelphia......covenants and agrees to pay the said party of the second part for the paving and contingent work done under and in pursuance of this contract in assessment bills on abutting property......or in warrants drawn upon the city treasurer......the several sums or prices specifically set forth in the said proposal hereto attached.......It is, however, expressly stipulated and provided by the said party of the first part that the said assessment bills and warrants shall be accepted as so much cash, and that in the event of a failure to collect the said bills, no recourse shall be had to the said party of the first part for the whole or any part of the amount for which they have been issued. The said party of the first part does not in any wise guarantee the value, validity or legality of the said assessment bills, and the said party of the second part expressly accepts and assumes all risk of failure to collect the said bills from the property owners against whom they may be rendered, whether such failure be due to the invalidity of the said bills or to any other cause. ......It is further distinctly understood and agreed that the amount to be expended for the work to be done under this contract shall in no event exceed the sum of $27,850 of which amount the said City of Philadelphia shall pay for paving the intersections of cross streets and in front of unassessable property, the sums or prices per square yard named in this agreement for such work, in warrants drawn as aforesaid, to an amount which shall in no event exceed the sum of $8,000."

After the work was completed under the contract assessments for the paving were made by the city against the property abutting on that part of the avenue. Two assessments for which bills were delivered to the plaintiff were levied against the right of way of the North

Pennsylvania Railroad Company (fronting) on the avenue. The properties were occupied by abutments of the railroad bridge crossing the avenue.

The assessment bills for the paving, including the two for the amount in suit, were delivered to and accepted by the plaintiff together with the warrant for the cash balance due the plaintiff under the terms of the contract. The warrant was subsequently paid.

This action was brought in November, 1911. The city pleaded payment and the statute of limitations. In entering judgment for defendant non obstante the learned trial judge held that the action was not barred by the statute of limitations, but that, conceding the evidence established the invalidity of the two assessment bills in suit, the plaintiff cannot recover under the facts disclosed on the trial. The learned judge in his opinion directing judgment for the defendant says, inter alia: "Can the party that has agreed to accept pay for its work in such bills, that has covenanted that no recourse shall be had to the city on the assessment bills turned over to it by the latter, that has bound itself to accept and assume all risks of failure to collect them from the property owners, whether such failure is due to their invalidity or to any other cause, and that has assented to the provision that the city does not in any wise guarantee either their validity or their legality, recover from the city the amount of the bills which it has accepted but which have subsequently proved to be invalid? We are of opinion that this question must be answered in the negative." The learned judge held that the acceptance of the two assessment bills by the plaintiff was, under the terms of the contract, a discharge of the indebtedness of the city, and that the sole remedy of the plaintiff was an action upon the bills against the abutting property owner.

We think the learned judge misconstrued the agreement of the parties. It is a settled rule of interpretation to which there is no exception that if possible a contract

must be so interpreted as to give effect to all its provisions. The construction of an agreement which gives effect to the manifest intention of the parties and is not clearly at variance with the language of the whole instrument should be adopted. "It is a cardinal rule of the interpretation of mutual contracts," says AGNEW, J., in Hazleton Coal Company v. Buck Mountain Coal Company, 57 Pa. 301, 313, "that you are not to abrogate or impair one part of a contract by another, when that other has an appropriate meaning which fully satisfies the words." And in announcing the same principle, Mr. Justice DUNCAN, delivering the opinion in Miller v. Heller, 7 S. & R. 32, 40, says: "A series of decisions has fixed a principle, that however general the words of a covenant may be, if standing alone, yet if from other covenants in the same deed, it is plainly and irresistibly to be inferred, that a party could not have intended to use the words in the general sense which they import, the court will limit the operation of the general words of any covenant in the same deed." The purpose in construing all contracts is to ascertain the intention of the parties, and when that is done by a general survey of the whole writing, such intention cannot be defeated by the language in any one part of the instrument which, standing alone, would lead to a contrary or different conclusion.

From the explicit language of the contract there can be no two opinions as to the part of the work for which the plaintiff company was to be paid by assessment bills and the part of the work for which it was to be paid in warrants drawn on the city treasurer. In the early part of the agreement it is provided that "the said City of Philadelphia shall be at no expense for said paving except for intersections and in front of unassessable property," and in a subsequent part of the contract it is stipulated that out of the total sum to be expended on the improvement the city "shall pay for paving the intersections of cross streets and in front of unassessable

property,......in warrants drawn as aforesaid."
With these exceptions, the city was to pay the plaintiff
for all the work done by it in paving the avenue in as-
sessment bills on abutting property. There can be no
question but that this is the true interpretation of the
contract and that such was the intention of the parties.
It is expressly so agreed, and there is no language in any
part of the contract that leads to a different conclusion
as to its interpretation.

It is contended, however, by the city that, under the
provisions of the contract, the delivery and acceptance
by the plaintiff company of the bills of assessment, in-
cluding the two covering the right of way of the railroad
property, were accepted as cash, that no recourse can be
had to the city for their payment, that the city did not
guarantee the validity or legality of the bills, and that
the plaintiff in accepting them assumed the risk of a
failure to collect, whether such failure was due to the
invalidity of the bills or to any other cause. Such un-
doubtedly were the terms on which the assessment bills
were to be delivered to and accepted by the plaintiff for
the work done by it as provided in the contract. If the
two bills of assessment representing the claim in suit
had been delivered to the plaintiff company in payment
for materials furnished and work done for which the city
was to pay in such bills there can be no doubt that the
contention of the defendant city would have to be sus-
tained and the plaintiff could not recover. The stipula-
tions of the agreement specifically declare that the cost
of the improvement, with the two exceptions, shall be
paid by assessments against the abutting property own-
ers. When such payments were made by bills of assess-
ment it was equivalent to a cash payment, and dis-
charged the indebtedness. The bills, as provided in the
contract, were accepted as cash without recourse to the
city and regardless of their validity or legality due to
any cause whatever.

There is no provision of the contract, however, that

the abutting property owners shall pay for paving the intersection of cross streets or in front of unassessable property. On the contrary, as observed above, the stipulations of the agreement specifically provide that the city shall pay for such work, and that it is to be done by warrants drawn on the treasury. The learned court below concedes that the railroad property in question is non-assessable, and it follows that the materials furnished and the work done in paving in front of it should be paid by the city under the contract. It is equally apparent that had the plaintiff company refused to accept the two bills of assessment in question it could have recovered under the contract for the paving in front of the railroad property. Is the plaintiff prevented from recovering by the fact that the city delivered to the company and it accepted the bills under a misapprehension as to the right of the city to assess the abutting railroad property? Were the delivery of the bills and the acceptance of them by the plaintiff a payment for paving done in front of unassessable property? We do not think so. In other words, we are of opinion that that provision of the contract applies only to bills of assessment delivered to and accepted by the plaintiff for work done for which the abutting property owners were responsible. Of course, it cannot be pretended that it was the intention of the parties that the plaintiff should be paid in assessment bills for work done on non-assessable property. By no logical course of reasoning can such a conclusion be reached. The agreement specifically provides that the city, not the abutting owner, shall pay for the paving done in front of unassessable property, and it follows that payment must be made in the usual way by the city and not by the delivery of assessment bills. The delivery of these two assessment bills, therefore, was not a payment for work done in front of the railroad property and, hence, such bills of assessment were not protected by the stipulation which provides that they shall be received as cash. The specific

provisions of the contract required the city, and not the abutting owner, to pay the indebtedness represented by these two bills, and the delivery of the bills was not payment and not in compliance with the contract, and hence the stipulations of the agreement as to immunity from attack on bills assessed against assessable property by reason of their invalidity can have no application. There was an apparent misapprehension by both parties as to the validity of assessments against the railroad property, but there was no misunderstanding or disagreement as to the fact that the city should pay for the work done in front of unassessable property. That obligation rests upon the city and it cannot relieve itself by anything but payment in cash or its equivalent. Had the railroad property been assessable the plaintiff would have been compelled under the contract to have accepted the bills of assessment as an absolute payment. It being unassessable, and, hence, not available for the purpose of raising the necessary funds for paving the avenue in front of the property, the plaintiff is not required to accept worthless bills of assessment in payment of the liability assumed by the city under the provisions of the contract. The city no doubt believed that the property was assessable and acted in good faith in making the assessments, but that does not give validity to the assessments nor compel the plaintiff company to accept the bills for the payment of the debt due it from the city. We may appropriately repeat here what was said in Addyston Pipe & Steel Company v. Corry, 197 Pa. 41, 49, as applicable to the present case: "There is nothing to indicate that these assessments were not in good faith and reasonable expectation supposed to be adequate to produce the required fund and offered and accepted by the contracting parties in the mutual belief in their validity. So far as they were upon abutting property they fulfilled their intended purpose. The distinction in regard to non-abutting property had not then been made and was not in contemplation of either side.

When it was determined that this part of the agreed means of payment would be unavailable, the loss should in equity and justice fall on the city which has received the full consideration stipulated for, and to this extent paid nothing."

We find nothing in the record to sustain the suggestion of the learned trial judge that the plaintiff's loss, if there should be any on this part of the work by reason of the failure to receive payment from the city, would be made up by profits on other parts of the work, or that a part of the consideration to be paid the plaintiff by the city was the assumption of a risk of the company's ability to collect from non-assessable property. We must assume that each party understood the liability it assumed by the contract, and that both parties believed they knew what property was assessable and what was unassessable, and that the terms of the contract were based upon that knowledge. It is true that the parties might have been, and it seems that they were, mistaken as to the right to assess the railroad property, but we cannot agree with the learned judge that the price to be paid per square yard by the city "was fixed in full view of and as complete compensation for whatever chances the contractor was taking" on non-assessable property. Neither would have been justified in bartering on such chances, certainly not the city. The contractor assumed the risk of the validity and legality of the bills levied against assessable property, it is so provided in the contract, but not against risks on bills against unassessable property the paving in front of which was to be at the expense of the city.

We are of opinion that the railroad property being unassessable, the city was required to pay the plaintiff for the improvement made in front of it, and that delivery to the plaintiff of the two assessment bills was not within the stipulation of the contract which made their delivery to the plaintiff the equivalent of a cash pay-

ment, and therefore does not prevent a recovery in this action.

The judgment is reversed with instructions to the court below to enter judgment upon the verdict.