# CHARLESTON.

J. F. HOLSWADE *et al. v,* CITY OF HUNTINGTON *et al.*

Submitted March 18, 1924.   Decided April 1, 1924.

1.   MUNICIPAL CORPORATIONS.—*Ordinance Directing Repaving Not Void Because Certificate Issued Abutting State Property Not Lien Thereon.*

Where a city has power to make permanent improvement of its streets and assess the abutting property owners with the expense thereof and issue to the contractor paving certificates in the proper amounts, which are declared to be liens upon the abutting properties for the payment of which the city shall in no way be liable, except upon action of a designated city board expressed by resolution of record; an ordinance which directs repaving of a street on which state land abuts is not void because the certificate issued against the state property is not a lien thereon, and may not be collected without the assent of the state.   In such case the contractor takes the risk of payment from the state.   (p. 129).

2.   SAME.—*Municipality May be Authorized to Improve Streets at Cost of Abutting Owners, Although Partial Expense of Previous Paving Paid by Them.*

The legislature may authorize a municipality to pave or repave or otherwise permanently improve its streets and alleys and assess the cost thereof against the abutting land owners, and those specially benefited thereby, although the streets and alleys have been originally paved and otherwise improved at the partial expense of the persons then specially benefited.   (p. 129).

3.   SAME.—*City's Determination of Necessity for Improvement Conclusive, Unless Clearly Unwarranted.*

Where a city has full authority to repave its streets or otherwise permanently improve them, the question of whether

necessity exists for repaving or improving is generally to be determined by the proper municipal authority, and the courts will not interfere with its affirmative action unless it is shown that its action in so doing is arbitrary, fraudulent, capricious or clearly unwarranted.   (p. 132).

4.  SAME.—*General Allegations in Bill to Enjoin Repaving of Streets on Ground Burdens Imposed Exceed Benefits Not Sufficient.*

In order to sustain a bill to enjoin the repaving of a city street where the city has that authority at the expense of those specially benefited on the ground that the burdens imposed will substantially exceed the special benefits received from the improvement, the allegations of fact must be such that if proven relief would be granted. A general statement that the burdens will be in excess of the special benefits is not sufficient for injunctive relief.   (p. 133).

5.  SAME.—*Improvement Contract Not Void Because Work Postponed Until Winter Months Passed.*

If the contract with the contractor, awarded upon competitive bids fairly and honestly submitted and awarded be in substantial compliance with the ordinance, plans and specifications, it will not be annulled, because the time for the beginning of the work is extended until the winter months have passed.  Such extension being for the benefit of the city and for the more efficient and better prosecution of the work is not such deviation from the forms of bids authorized by the ordinance, as will render the contract void.  (p. 135).

6.  SAME.—*Repaving Ordinance Not Invalid Because Material Contingent Upon Result of Bidding.*

Where the charter requires the city, when it has concluded to pave, repave or permanently improve its streets, to proceed by ordinance to set forth the work and improvement proposed to be done, the extent of the improvement and the manner of paying for the same; an ordinance complying with the charter in these respects which provides for resurfacing or repaving either with brick or suitable material, to be decided upon when the bids are let and in accordance with plans and specifications then adopted, approved and on file, is not void because it does not positively state which improvement will be adopted and the material to be used, both being contingent upon the result of the bidding.  It is sufficient notice to the property owners that both are contemplated and that either may be adopted.  (p. 136).

96 W. Va.

7. SAME.—*Improvement Ordinance Held Not Invalid for Indefiniteness of Manner of Payment.*

In such ordinance the manner of paying for the improvement must be stated. Where the ordinance says the entire cost shall be paid by abutting owners calculated in the manner prescribed in a designated section of the charter, and there are two ways by which the improvement may be paid for, designated in the charter: (1) by city bond issue repaid by assessment on the abutting owners, and (2) by issuance of paving certificates as liens on the abutting property, direct to the contractor, and no steps have been taken for bond issue, and it is apparent that no one could have been misled, the ordinance will not be annulled because of indefiniteness. (p. 138).

8. SAME.—*Improvement Ordinance Held Not to Shift Burdens From Street Car Company to Property Owners.*

If the ordinance in respect to the extent of the improvement directs that the streets be paved from curb to curb as set out in plans and specifications adopted and on file which plans and specifications confine the work to be done to that portion of the streets between the curb and "granite block headed adjacent to the outside rails of the street car track;" and there is an ordinance in effect requiring the street car company to do all paving between its rails and a space of two feet outside of its rails the ordinance will not be construed to mean that the traction company will be relieved of its obligation, and the burden transferred to the property owners. (p. 138).

9. SAME.—*Promises of Members of Board as Individuals Not Municipal Action.*

Assurances and promises of members of a municipal board while not sitting as such, but as individuals, that the board when in session would or would not enter a certain ordinance affecting the status of those to whom the assurances and promises were made, does not constitute municipal action, and are not sufficient to annul an ordinance subsequently enacted contrary to the assurances and promises. (p. 140).

McGINNIS, JUDGE, absent.

Certified questions from Circuit Court, Cabell County.

Action by J. F. Holswade and others against the City of Huntington and others. A demurrer to the bill was sustained in part and overruled in part, and the questions arising thereon certified.

*Ruling sustained in part. Reversed in part. Remanded.*

*Livezey & McNeer,* for plaintiffs.
*C. W. Strickling,* for defendant City of Huntington.
*Paul W. Scott,* for defendant Harrison & Dean·

LIVELY, JUDGE:

Having sustained in part and overruled in part a demurrer to the bill and each paragraph thereof, the court on joint application and its own motion certified its ruling to this court for review.

The bill is by abutting property owners on Eighth street and Third avenue, and as citizens and taxpayers of the city of Huntington against the city as a municipal corporation, and Harrison and Dean with whom the city has contracted for permanently improving the named streets in certain portions of the city by paving, and seeks to enjoin the city and its contractors from performing the contract, alleging that the ordinances under which it was made and the contract in pursuance thereof are illegal, null and void.

The city proceeded under its charter powers to repave the designated streets, and perhaps portions of other streets, with brick laid on a concrete base, by contracting therefor, after competitive bids, with its co-defendants, under the method authorized in the charter of issuing certificates of assessment for the entire improvement upon the abutting adjacent or contiguous lots especially benefited, in the propositions in which they are especially benefited by the improvement. Sec. 65 (c) chap. 78, Acts 1923. These streets having originally been paved at the partial expense of the abutting land owners, the bill challenges the power of the city under the charter or under general law to repave the same at the expense of the abutting property owners; and challenges the validity of the contract because the ordinances and procedure culminating in the paving contract, were not enacted or conducted in the manner and form required by the charter; because the assessments proposed are confiscatory and of no special benefit to the abutting property, and the acts of the commissioners in so ordering the paving were arbitrary and capricious; that the individual representations of the character of the proposed improvements made, by two of the commissioners were de-

ceitful and amounted to fraud on plaintiffs; that the ordinance is void because the total cost is to be assessed against abutting property, whereas two feet of the space on either side of the street railway tracks should be paid by the traction company; because the ordinance is *ultra vires*, the city being without authority to assess and make liable the Marshall College lot abutting on Third street for its portion of the cost of improvement; and because the contract is not in accord with the bids; the price agreed to be paid excessive, and the contractor allowed to take the old brick at an inadequate price.

The court held that plaintiffs could maintain the bill as abutting property owners and also as residents and taxpayers on behalf of all other residents and taxpayers who desired to join as plaintiffs under the theory that all other taxpayers not abutting were pecuniarly interested. The bill charges that the city has no right to assess the Marshall College property for that portion of the paving along its lot, which will amount to about $16,000, and that the city will likely be liable for this amount out of its general revenues, if not paid by the state, and that the city now has no available funds out of which that contingent debt can be paid.

The charter, section 63, provides that if the assessment method be adopted for making the improvement, "the city in negotiating and selling such certificates shall not be held as guarantor or in any way liable for the payment thereof, except upon direct action of the board of commissioners as expressed by resolution of record." There has been no expression of record that the city will guarantee or be liable for the paving along the college site, and until that be done we do not see how the general taxpayers will be affected as such. The form of paving assessment certificate is given in the charter and adopted by the ordinance, and in the form it is certified that all acts, conditions and things required to be done precedent to the letting of the contract, equalizing and making of the assessment and issuance of the certificates, have been done as required by the charter and the constitution and laws of the state. Counsel for plaintiff argues that the college property can not be made liable to the payment

of such a certificate issued against its lot, and eventually the city will be compelled to pay it, especially if the certificate should go into the hands of an innocent purchaser for value. The law under which these certificates are issued is as much a part thereof as written therein, and the contractor as well as any purchaser is charged with notice that the city does not guarantee them and is in no way liable. The contractor takes them at his own risk. The certificates are not negotiable, they are not promises to pay, and any holder would be in no higher right than the contractor. It is quite generally held that the municipality is not liable for payment of void or unenforceable certificates, unless the contract makes it liable. McQuillan Munic. Corp. Vol. 8, p. 774, citing, among others, the cases of *Enid* v. *Warner-Quinlan Asphalt Co.*, 161 Pac. 1092; *Vulcan etc. Paving Co.* v. *Philadelphia*, 239 Pa. 524; *Donahue* v. *LaGrange*, 263 Ill. 607. We do not see any pecuniary interest in the general taxpayers which would be affected as the case now stands. The demurrer to that part of the bill in which plaintiffs sue on behalf of the general taxpayers should have been sustained. The ordinance and contract are not void because a part of the paving is to be laid by the college property, a part of which abuts on Third street. The demurrer was properly sustained to that part of the bill, paragraph 10, which charged the ordinance as void because defendant was without power to assess the state property occupied as a college on Third avenue and that the city had made no appropriation and had no funds available for that part of the paving.

Paragraph Three of the bill charges that the streets proposed to be paved were formerly paved in 1891 to 1894, and that two-thirds of the cost of the improvement was assessed to and paid by the then abutting owners; and Paragraph Five charges that at the time of the enactment of the ordinance complained of, the pavement ordered to be relaid was in good serviceable condition and repair and that it was the duty of the city to keep and maintain the same in good repair out of the general revenues of the city and not at the cost of the abutting property owners. The demurrer to these paragraphs was overruled. Standing by themselves they state a fact and

a duty which may be readily accepted. It is the duty of the city to keep its streets in repair out of the general revenues when once opened and improved for public use. But the proposition at issue is not one of repair but of permanent improvement; and these paragraphs considered in connection with other parts of the bill bear upon the crucial question of the right and power of the city to repave its streets at the expense of the abutting land owners, under the assessment plan, after having originally paved the streets at the partial expense of the abutting property owners. It is insisted by plaintiff that the city has no such authority. It is pointed out that the Pennsylvania courts hold that assessments can not be made against abutting property for repaving. *Hammet* v. *Philadelphia,* 65 Penn. St. 146, 3 Am. Repts. 615; *Harrisburg* v. *Segelbaum,* 151 Penn. St. 172; 20 L. R. A. 834. It is urged that this rule should be adopted in this state. While it is admitted that the general rule is otherwise, it is contended that reason and logic support the Pennsylvania holding. Counsel for defendant in argument say the Pennsylvania rule is contrary to that adopted in every other state and by the Federal courts including the Supreme Court of the United States. We find the vast weight of authority supports the proposition that a municipality, after it has once paved a street, may again repave it and charge the cost to abutting property owners. 25 R. C. L. 103; 1 Page and Jones Taxation by Assessment, secs. 379, 389; Hamilton Law Special Assessments, sec. 249; *Smith* v. *Washington,* 20 How. (U. S.) 135. A citation to numerous cases will be found in section 381 of 1 Page and Jones above cited. It would be useless to repeat the reasons for the rule stated in these cases. The inquiring mind is directed to them. Local assessment for improvements of that character is a function of the legislature, and these cases in substance hold that there is no reason for holding that the power of the state is exhausted after it has once authorized a local assessment for such an improvement; that no implied contract exists between the property owners and the municipality or the state that the improvement when once worn out shall be replaced out of the general revenues. If the legislature has authorized local assessments for repav-

ing, then the municipality has that right. Such is the substance of these holdings and the reasons given are forceful. But whether we follow the Pennsylvania doctrine or that announced by the majority of the decisions (the latter, we think, is the proper doctrine), the legislature has accorded to the city in its charter the power to repave its streets at the cost of the abutting land owners and those contiguous thereto whose property would be especially benefited. It is well settled in this state that the legislature can confer power upon municipalities to make special assessments for improvement purposes under the principle that private property will be benefited by the public improvement. *Heavner* v. *City of Elkins,* 69 W. Va. 255; *Parkersburg* v. *Tavenner,* 42 W. Va. 486; *Hager* v. *Melton,* 66 W. Va. 62. In section 65 of the charter will be found authority for the commissioners of the city to "cause any avenue, street, road or alley therein to be graded, or curbed or recurbed with stone, concrete or other suitable material, or paved or repaved, between curbs, with brick, wood block, asphalt or other suitable materials, or to be graded and curbed or recurbed, paved or repaved as aforesaid, or to be macadamized, or to be otherwise permanently improved or repaired." The entire cost or any part thereof may be assessed to and required to be paid by the owners of the land, lots or fractional parts or lots fronting or bounding on such avenue or street. When they propose to cause such improvements to be made they must by ordinance or resolution set forth the work and improvements proposed to be done, the extent thereof and the manner of paying for same, and publish the ordinance or resolution for two successive weeks in two newspapers of opposite politics and of general circulation in the city. Ten days must be given from the first publication, in order to allow the property owners on the street proposed to be improved to file protests against it, and if three-fourths of the bona fide owners of more than three-fifths in lineal feet abutting on the street proposed to be improved, protest in writing the improvements shall not be made. It is reasonably clear that power is given to the city to pave or repave its streets at the cost of the abutting land owners, and make the other improvements designated in said section. This power

is dependent upon, subservant to, and may be defeated by, a veto of the property owners by a protest in writing. They may prevent the work entirely if a sufficient number of the *bona fide* owners make the protest. The legislature has seen fit to accord to the abutting owners ample protection against assessments for any of the named improvements. The reasons for protest are not required to be stated, in the statute; all that is required is a protest in writing by the designated number. They may protest and stop the improvements because the special benefit derived by them would be less than the cost of the improvement, whether the cost be great or little; or for any other reason deemed sufficient by them, whether the work be for grading, curbing, paving, or repaving, or the streets to be otherwise permanently improved or repaired. To that part of the bill the demurrer should have been sustained.

The charter gives the commissioners the power to determine in the first place whether any particular street should be improved. This is legislative in its character. It is presumed that the commissioners would properly exercise the functions of their office and would not arbitrarily, oppressively or fraudulently order a street to be improved which did not need it, in order to assess the cost upon its citizens. If it should do so courts of equity in a proper place would prevent the exercise of such function induced by fraud, spite or other ulterior design. There is no charge of this character in the bill. The charge is that the streets proposed to be improved were in good and serviceable condition at the time of the ordinance complained of. The judgment of the abutting owners in that regard is set up against the judgment of the commissioners. Moreover, the bill shows that the first pavement was made between the years 1891 and 1894. The first paving would necessarily be much worn in twenty-nine years of use. The bill also says that plaintiffs were misled about the character of the improvement to be made by the declarations and press interviews given by two of the commissioners after the ordinance of August 28th was passed and published. Relying upon the declarations of these two members of the board of commissioners to the effect that the streets would be *resurfaced*

they did not file the protest authorized by the statute.  It is clear that the streets were out of repair, and plaintiffs were fully aware of that fact, and aware that steps were being taken for the permanent improvement thereof.  In order for the courts to interfere with a municipality in its street improvements on the ground that its action is arbitrary, fraudulent, capricious and unwarranted, the bill should show facts and clearly allege abuse of discretion as to these delegated powers.  Moreover, if the streets were not out of repair, and in good serviceable condition sufficent for the traffic passing over them, and the action of the commissioners in ordering repavement was capricious, arbitrary and unwarranted, the legislature has provided a plain, simple and easy method by which the land owners could be protected without the intervention of the courts; namely, a protest in writing filed within the statutory period.  In some jurisdictions it has been held that if the improvement is one which the council has the power to make, the question of the necessity for it is one to be determined by the municipal authorities and that the courts can not interfere; and assessments levied for new improvements have been, under this theory, held to be valid.  *City of Kokomo* v. *Mahan,* 100 Ind. 242; *Wilkins* v. *City of Detroit,* 46 Mich. 120; *McCormick* v. *Patchin,* 53 Mo. 33; *Wilkin* v. *Houston,* 48 Kan. 584.  *Durmesnil* v. *Louisville,* 109 Ky. 1, where a sidewalk which had been laid for twenty-two years was relaid, although in fair condition.  ''In other words, where a power touching local improvements is expressly granted to municipal authorities, as a rule, they are in the reasonable exercise of it, beyond control of the courts.''  McQuillan Munic. Ord. sec. 519, citing numerous cases.

The bill charges that the cost of the proposed improvement is in excess of the special benefits which will be derived therefrom to the abutting land owners, and is, therefore, confiscatory and should be enjoined.  It is stated that the contract is let at $4.49 per square yard, and that other pavements in the city of the same construction have been let at $3.79 per square yard, and it is charged upon information and belief that the awarding of the contract for that price was unreasonable, excessive and capricious, and if carried into effect would

amount to a fraud against the plaintiffs. It appears that the contract was let as the result of competitive bids, openly and fairly conducted as required by the charter, and that Harrison & Dean, the contractors, were considered and accepted as the lowest responsible bidders. There is no allegation of fraud in the letting of the contract nor is there an allegation that the work on these particular streets for this improvement can be done at a less price. The fact that other contracts have been let at a lower price for similar work in other parts of the city would not be controlling. Prices of labor and materials fluctuate. In paragraph 13 of the bill it is stated that the cost of the proposed improvement at the price per square yard against a thirty foot lot will be anywhere from $450 to $600, and that no special or peculiar benefits will accrue to the abutting owners, or at least the assessments will be greatly in excess of the special and peculiar benefits accruing to such property; and under paragraph 14 it is charged that the cost of the improvements upon the abutting property would amount to a confiscation thereof without just compensation and without due process of law. We think these statements and conclusions are not sufficient to show that the cost of the paving will exceed the special or peculiar benefits derived therefrom to the property owners. The values of the properties abutting on these streets is nowhere alleged nor does it appear whether the streets are in a business, residence or sparsely built up section. There is nothing to show what the increased value of the property would be after the new pavement has been laid; whether it would increase the values little or much. There are many elements which would enter into an inquiry as to the value of the special benefits which would be derived from the improvements, and a general allegation that such improvements would be confiscatory is not sufficient. Counsel for plaintiff cite the celebrated case of *Norwood* v. *Baker,* 172 U. S. 269; the cases of *French* v. *Paving Co.,* 181 U. S. 324; and *Wagner* v. *Leser,* 239 U. S. 207, as summarizing the principle that no assessment by a municipality upon the property owners will be upheld for an improvement which is substantially in excess of the benefits accruing. In the Norwood case, decided in

1898, the land was condemned for a street, without compensation, and then the land owner was assessed with $218.58 to pay the costs of condemnation proceedings. Many courts in attempting to follow that decision, the language of which is very broad, made different interpretations and subsequently the Supreme Court of the United States in several decisions explained and limited the Norwood . case, holding that the acts in that particular case amounted to an abuse of law, and a confiscation rather than a valid exercise of the taxing power. The holding in their later cases is to the effect that the proper legislative body may determine the amount to be assessed for a local improvement, designate the lands to be benefited upon which an assessment may be made, without first giving an opportunity of the owners of the property to be assessed, to be heard upon the amount of the assessment, or the extent of the benefit to be conferred. It is recognized, however, that there may be such an abuse of legislative power in that regard as would warrant the courts in protecting the land owner against arbitrary and unwarranted action on the part of. the municipality or legislature; and such principle is recognized in *Wagner* v. *Leser,* above cited. McQuillan's Municipal Ord. sec. 522. Facts must be alleged from which, if proven, the court can see that the cost of the improvement will be substantially in excess of the special benefits conferred. We think the demurrer to that part of the bill should have been sustained.

Sec. 8b of paragraph 14 of the bill charges in substance that the contract is void, (1) because different from the terms and conditions proposed for competitive bids; (2) the price to be paid is excessive; the terms are different from those · authorized by the charter and ordinances; and because the price at which the old brick in the pavement was sold to the contractor was inadequate, and plaintiffs were given no opportunity to reclaim or recover the brick. The forms of bids authorized by the ordinance and prepared by the engineer required the work to begin within fifteen days after acceptance. The contract awarded to the lowest responsible bidders, Harrison & Dean, on October 22, 1923, fixed April 1, 1924, as the date of beginning the contract and October 1,

1924, as the date of completion. Is this such a substantial variation as would make the contract void? No bidder could have been deceived. The statute does not nor does the ordinance arbitrarily fix the period when the contractor shall begin work after his bid has been accepted. What harm has been done to plaintiffs or the city by deferring the beginning of the work until after the winter months had passed? The details of the contract are necessarily left to the commissioners and if its terms do no violence to the statute or ordinance it should be upheld. Is the price per yard excessive? The answer is contained in the result of the competitive bidding as directed by the statute. In what particular the contract is different from that authorized by the charter and ordinance we fail to perceive, unless it be that certificates of assessments may be issued upon the completion of a part of the work. Section 67 of the charter authorizes that to be done. Every bidder was charged with knowledge that the commissioners had that power. No authority is cited for the proposition that the abutting land owners have any property interest in the brick reclaimed from the old pavement, or any right to dispose of it. We find no stipulation concerning the disposition of the old brick to the contractor, and no mention of the same in the contract. How could the contract be void for that reason? The demurrer to section 8b of the bill should have been sustained.

A charge of invalidity of the ordinance of August 28th is predicated on the ground that it does not set forth the work and improvement to be done, the extent thereof and the manner of paying for it as required by the charter. Reason as well as authority says that the legislative body must first determine the character and extent of the work proposed and as near as may be the amount of the burden which will be imposed. 25 R. C. L. p. 155 (Special Assessments) sec. 69. *McCrowell* v. *Bristol,* 89 Va. 652. The ordinance "should contain enough either in itself or by reference to plans and specifications to enable a property owner to determine for himself what the probable expense will be, in order that he may determine whether or not to enter protest against the improvement.", The ordinance recites that the streets be

resurfaced or repaved and the entire cost paid by the owners abutting or adjoining thereon, between certain designated points on each street; and ordains that all things necessary to be done, and the amounts to be paid by the abutting owners, shall be done and calculated in the manner provided for in section 65 (c) of the charter; and September 10th following is set as the day on or before which protests shall be filed by any protestant. Because the improvement proposed or materials to be used is in the alternative, "resurfaced or repaved," it is argued that the ordinance is void. The ordinance enacts that the streets named, between certain points, be "resurfaced or repaved and improved either with brick or other suitable material to be decided upon when the bids therefor shall be let, in accordance with plans and specifications therefor proposed by the city engineer, adopted and approved by the board of commissioners." We can see no valid objection to the ordinance in that it declares that the improvement will be resurfacing or repaving to be decided upon when the bids are let. By publication of the ordinance the abutting land owners were notified that one or the other improvement would be made at their expense to be determined when the bids were let, and in accordance with the plans and specifications adopted and on file. These plans and specifications contemplated bids for repaving and resurfacing. They were then "in court" and were given until September 10th, more than ten days, to prevent either repaving or resurfacing, or both. Also the method of paying for the improvement by the abutting property owners is challenged as indefinite and misleading because, it is averred, that there are two methods of paying under the charter; one under section 67 where the certificates are payable in thirty days, 1, 2, 3 and 4 years; and the other under section 66 where bonds may be sold payable in 2, 4, 6, 8 and 10 years, and assessment certificates issued and sold payable in one to ten years, to repay to the city for the bonds. We do not think the ordinance is fatally defective because it does not provide that the re-surfacing or repaving shall be done with one kind of material alone. The designation of "brick or other suitable material" is a substantial compliance with the statute which requires the ordin-

ance to "set forth the work and improvement proposed to be done." Such ordinances have been sustained in the cases cited by defendant. *Ex Parte City of Paducah,* 28 Ky. L. Rep. 412, 89 S. W. 302; *Emmert* v. *Elyria,* 74 Ohio State 185, 78 N. E. 269; *Richardson* v. *Omaha,* (Neb.) 104, N. W. 172; *Connersville* v. *Merrill,* 14 Ind. App. 303, 42 N. E. 1112; *Jacksonville R. Co.* v. *Jacksonville,* 114 Ill. 562, 2 N. E. 478; *Lambert* v. *Marcuse,* 137 Cal. 44, 69 Pac. 620.

Plans and specifications proposed and adopted were on file in the engineer's office. Plaintiffs admit that these plans were there, but say they were misled as to what would be done under them by the declarations and press interviews of two of the commissioners. The point is made that there was no formal adoption of these plans until September 17th. An exhibit with the bill shows they were adopted on the latter date; yet there is no allegation that they were different from those already on file when the ordinance of August 28th was passed. Could plaintiff's have been prejudiced? The point that the manner of paying for the improvement should have been first determined by the initiatory ordinance is not without difficulty. The charter requires the ordinance to set forth the improvement, the extent thereof and the manner of paying for the same; and the ordinance says the entire cost shall be paid by the abutting owners calculated in the manner provided for in section 65 (c) of the charter. The manner of paying is by assessment on the property owners, and there are two ways by which it may be done. One by direct payment from property owners to the contractor, in payments running over four years; the other by direct payment from the city by issuance and sale of city bonds ultimately repaid to the city by assessments upon the abutting property owners. While the ordinance is silent on the way of payment, (if that be necessary to its validity), we think it could be reasonably interpreted to mean that the property owners should pay direct, the way subsequently provided for in the contract. There were no steps taken to issue bonds. Without them the city could not repave under the second way above designated; and it had ordered that the work be done, and the contract let. No property owner could have been misled as to the way con-

templated. Steps in the procedure to improve at the expense of the property which are jurisdictional in the charter are regarded as conditions precedent and their omission renders the assessment invalid. *State ex rel. Peckham* v. *Mayor of Newark*, 43 N. J. L. 576; *Daly* v· *City of San Francisco*, 72 Cal. 154; *Village of Western Springs* v. *Hill*, 177 Ill. 634. If we could see that any substantial right of plaintiff was affected, the assessment should be invalidated. We can not see that they have been misled as to the way of payment, or that they have been materially prejudiced in that regard. Under either way of payment the burden would ultimately be borne by them. We have concluded to approve the action of the court in sustaining the demurrer to this part of the bill.

In paragraph 9 the bill charges that the ordinance is void because it seeks to assess against the abutting owners the entire cost of the repaving between the curbs; that the street railway occupies a portion of the streets to be improved, which it is required to pave at its own expense, the space between its rails and a space of two feet on the outside of the rails; and it is argued that the entire expense could not properly be charged to the abutting owners. The ordinance directs the streets to be repaved or resurfaced between certain designated points, and refers to plans and specifications for the improvement filed in the city engineer's office. By reference to these specifications we find that the work is "confined to that portion of the streets between the curbs and granite block headed adjacent to the outside of the rails of the street car tracks." Just how far this granite block head adjacent to the outside of the rails of the street car track is from the track does not appear, and it would be unreasonable to interpret the ordinance as relieving the traction company from its obligation under the charter. It is shown that the traction company, about the year 1914, paved that portion of the street required by the ordinance to be paved by it, with brick laid on a concrete foundation. We may presume that the excluded portion not to be covered by the work and set out in the plans and specifications, is that portion of the street which is required by positive law to be paved by the

street car company. The ordinance, plans and specifications are reasonably clear in that respect. It is not directly charged that the paving done by the street car company will be removed and plaintiffs required to pay for relaying it. The argument is that it may be done. The demurrer was properly sustained to this paragraph.

Paragraphs 7 and 8 of the bill charge in substance that after the ordinance was published some of plaintiffs and other abutting owners were misled by Chapman and Newman, two of the three members of the board of commissioners, as to the character of improvement to be made, receiving assurances from them that the streets would be resurfaced and not repaved; and relying upon these assurances they did not protest within the ten-day period allowed by the statute for that purpose; and that three-fifths of the abutting property owners were then and ever since have been opposed to repaving, and therefore the assurances and representations of the commissioners falsely made constituted a fraud against them on the part of the city, which invalidates the assessment and paving contract. The trial court sustained the demurrer to these paragraphs. If these allegations in fact be true, and they must be so considered on demurrer, they strongly appeal to equity and good conscience for remedy. On the other hand a municipality is not bound by the declarations and assurances of any of its officers in relation to the way in which it will exercise its legislative functions. The question of the necessity and reasonableness of a local improvement is for the determination of the legislature and not for the courts, and the legislative determination of the character of an improvement as a local one is conclusive unless arbitrary and unfounded in reason, 25 R. C. L. p. 99, sec. 14. The question of whether a local improvement shall be made, and the character thereof, may be delegated by the legislature to the city authorities, as was done in this case. It is left to the board of commissioners to determine the necessity for, and to order a street to be paved, repaved, etc. The board of commissioners is not bound by the declarations and assurances of its members when not acting as a board. Many of our cases illustrate this salutary principle. *Atlantic Bitu-*

*lithic Co.* v. *Edgewood,* 76 W. Va. 630. Declarations and promises of members of a corporate governing body of a muncipality when not in session as such will not bind the corporation. A tax payer or other person cannot be heard to attack the validity of a municipal ordinance because of the failure of those who enacted it to vote against it upon its passage; or because of their assurances that the ordinance would not be moulded in a particular way. "The affairs of corporate body can be transacted only at a corporate meeting. Its legislative and discretionary powers can be exercised only by the coming together of the members who compose it; and its purposes or will can be expressed only by a vote embodied in some distinct and definite form. Their only existence is as a board, and they can do no valid act except as a board, and such act must be by ordinance or resolution, or something equivalent thereto." *Schumm* v. *Seymour,* 24 N. J. Eq. Rep. p. 143. Generally, the courts will not inquire into the motives which govern members of a legislative body in the enactment of a law, for the purpose of defeating the law, or allow it to be shown that fraud, corruption and bribery of the members were resorted to in its enactment. *McCulloch* v. *State,* 11 Ind. 424; *Railroad* v. *Cooper,* 33 Pa. St. 278; Cooley Const. Lim. (7th ed.) p. 258. In the formation of a contract between a city relating to property or affairs of the city, although it has been entered into, or authorized by ordinance, the city has discretionary power; and if the passage of the ordinance and resultant contract has been induced by fraud in fact or law, whether fraudulent in fact or effect, it may be inquired into by the courts. 2 Dillon on Munic. Corp. sec. 778, p. 1158. There is no averment of that character in this case. If the corporate act of a municipality duly consummated in the manner prescribed by law could be set aside because of the declarations of what would be done prior to its consummation by some member or members, there would be little finality or validity in transacting municipal business. The ordinance of August 28th gave notice that the streets would either be resurfaced or repaved; the plans and specifications accentuated the intention, and gave details of resurfacing and repaving. The matter was up for official action, and the

declarations and assurances of the members as to what would be the result of corporate action subsequent thereto cannot control. If plaintiffs relied thereon, and desisted from filing their written protests against the plan of repaving, they cannot now complain of the ordinance for the reason that their confidence was misplaced. It is too late to protest after contracts have been advertised for or after the work has been done. *McKee* v. *Town of Pendleton,* 162 Ind. 667; *Edward House Co.* v. *City of Jackson,* 45 So. 14. Plaintiff's counsel cite 2 Dillon on Munic. Corp. sec. 778, to sustain the proposition that these promises of the commissioners would invalidate the ordinance directing the improvement by paving, as constituting a fraud. The text there cited is to the effect that if the municipality does not use due diligence, or is negligent, or by the fraud of its officers the contract with the contractor imposes upon the tax payers an unreasonable cost for the improvement, the contract will not stand. If fraud has entered into the contract between the city and the contractor whereby unreasonable and unfair burdens have been imposed upon the tax payer who foots the expense, it may be expunged, and the burden removed. There is no contractual relation here between these complainants and the board of commissioners. The demurrer to this part of the bill was properly sustained.

Under the charter the power of the city to pave or repave or otherwise permanently improve its streets at the expense of those specially benefited is very broad and comprehensive; on the other hand the powers of the abutting land owners to prevent the improvement at their expense, at their election, is accorded to them in a simple effective way. Unfortunately for these plaintiffs (according to the bill) they have waived their right to prevent the improvement in the way accorded by the charter by relying upon verbal assurances from members of the board of commissioners not made while acting as such, that the improvement would not be made. They did so at their own risk. They now seek to defeat the improvement by denying the delegated power to improve at their expense; charging invalidity of the ordinance therefor; the proceedings thereunder; and the contract let at public bid.

The bill is well and ingeniously drawn, and the case well argued and briefed by able counsel. On the whole we think there has been a substantial compliance with the provisions of the charter in arriving at and entering into the contract. The demurrer to the bill should have been sustained, and we so answer the questions certified.

*Ruling sustained in part; reversed in part; remanded.*