# CHARLESTON.

G. P. JEFFERS *et al. v.* CITY OF CHARLESTON *et al.*

(No. 5860)

Submitted January 12, 1927. Decided January 25, 1927.

MUNICIPAL CORPORATIONS—*Municipality Has Inherent Authority to Exercise Reasonable Regulations in Manner of Improving Streets For Purpose of Protecting Life and Property (Charleston City Charter, §§ 7, 61).*

> A municipality possesses inherent authority under its general police power to exercise reasonable regulations in the manner of improving its streets, for the purpose of protecting and preserving the lives and property of its citizens.

(Municipal Corporations, 28 Cyc. p. 946.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by G. P. Jeffers and others against the City of Charleston and others for injunction. From a decree overruling defendants' motion to dissolve a temporary injunction, certain defendants appeal.

*Reversed.*

*A. G. Stone,* for appellants.
*W. E. R. Byrne,* for appellees.

LITZ, JUDGE:

The defendant, City of Charleston, appeals from a decree of the circuit court overruling its motion to dissolve a temporary injunction awarded by a member of this Court, enjoining the city and the Andrews Asphalt Paving Company, contractor, from improving Pennsylvania Avenue between Lilly Street and the corporation line in accordance with plans and specifications providing for the paving of a 16 foot roadway on either side of a 12 foot strip in the center of the street, to be occupied by the track of the Kanawha & West Virginia Railway Company. Pennsylvania Avenue is not only an arterial street but forms part of an important State highway.

The Kanawha & West Virginia Railway Company has maintained and operated for about twenty years a steam railway over and along Pennsylvania Avenue at an elevation of three feet above the surface of the street. The proposed plan of the work, on file at the passage of the resolution by the city council November 2, 1925, declaring the expediency and necessity of said improvement, provides for the relocation of the railway track in the middle of the street, level with curbs on either side, to be constructed 6 inches above the surface of the street and six feet from the center of the track, with a strip of pavement 16 feet wide along the outside of each curb, the railway company to pay for the curbs and the improvement of the 12 foot strip occupied by its track.

Complying with the protest of plaintiffs, February 22, 1926, the city council adopted the report of the Street Committee, recommending ''that Pennsylvania Avenue from Lilly Street to the corporation line be paved flush with the railroad tracks

on both sides of said tracks, so that the street would be paved and open to traffic over its entire surface including the railroad track". Bids were then advertised for and the contract was let to the defendant Andrews Asphalt Paving Company in accordance with the modified plan.

Before the work was started, however, the mayor and city council were more fully advised of the dangers incident to the plan of paving sought by the plaintiffs, and on June 7, 1926, directed the contractor to proceed with the work according to the original plans, which conform to the desires and recommendation of the State Road Commission. This suit followed.

The plaintiffs first contend that the city is compelled by Section 61 of its charter to pave the whole street flush with the railway track in order that the entire surface may be used for traffic. This section in part reads:

> "Whenever the council of said city shall deem it expedient to cause any street or alley in said city or portion thereof to be paved, curbed or macadamized, or otherwise improved in a permanent manner, it shall order the work done in the following manner and upon the following terms: The contract for such paving or other improvements shall, after due advertisement in which the council shall reserve the right to reject any and all bids, be let to the lowest responsible bidder. The contractor shall look only to the city for the payment of the work, and in no sense to the abutting land owners, except as hereinafter provided. The total cost of grading and paving or otherwise improving any such street or alley (with the exception that where a street is occupied by the street car tracks or other railways, such cost of opening or otherwise improving the distance between the rails and two additional feet outside of each rail, shall be borne and paid entirely by the street car or other railway company operating such street or other railway, unless otherwise provided by the franchise of such street car or other railway company granted previous to the passage of this act), shall be borne by the owners of the land abutting upon said street, alley or portion thereof, accord-

ing to the following plan, that is to say: payment is to be made by all land owners on either side of such portion of a street or block so paved or improved in such portion of the total cost, less the portion, if any, chargeable to such street or other railway company, as the frontage in feet of his land so abutting bears to the total frontage of all lands so abutting on such street, alley or portion thereof so paved or improved as aforesaid. The cost of such paving or improvement chargeable to the abutting owners is not to include any portion of the amount paid for paving of squares at intersection of streets or for curbing which shall in all cases be borne and paid by the city.''

Section 7 of the charter expressly grants to the city the control of all streets, avenues, roads and alleys, with authority to regulate the use thereof; and further confers upon the municipality the power to promote the general welfare of the city, and to protect and preserve the lives and property of its citizens. Moreover, the city possesses, independently of statute, as a part of its police power, authority to protect and preserve the lives and property of its citizens. This express and inherent power is not affected by Section 61 of the city charter.

Said section does not require that the portion of the improvement to be paid for by the railway company shall be of the same character as the remainder of the work, or that the entire surface of the street shall be improved on a level with the railway track. There is no denial of the fact that the use for traffic of a steam railway track, occupying the center of an important street and State highway, would be highly dangerous to persons and property. Serious accidents often occur where a street or highway merely intersects a steam railway. It is not claimed that the street divided into two roadways sixteen feet wide will not be sufficient to accommodate the public needs.

The second contention of the plaintiffs is that there should have been a readvertisement of bids before changing the contract. It is not shown in what way, if any, the plaintiffs have been injured by the act complained of. There is no suggestion that the contractor was benefited by the change in

plans. As was said in the case of *Holswade* v. *City of Huntington,* 96 W. Va. 124, where it was claimed that a paving contract was void for alleged deviation in its terms from the advertisement for bids, ''What harm has been done the plaintiffs or the city'' by the change?

These is certainly no merit in the final point of attack, that the construction of curbs on each side of the railway track, to prevent its use by vehicles, will result in the abandonment to the railway company of that portion of the street. The protection provided for would be of no effect if it did not prevent the use of the railway track as a part of the thoroughfare.

An order will therefore be entered by this Court reversing the decree of the circuit court, and dissolving the temporary injunction.

*Reversed.*