## Bokser *v.* Philadelphia, Appellant.

Argued April 22, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Karl I. Schofield,* Assistant City Solicitor, with him *Matthew W. Bullock, Jr.,* Assistant City Solicitor, *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for appellant.

*Lester S. Hecht,* for appellee.

OPINION BY MR. JUSTICE BOK, June 29, 1960:

The City of Philadelphia, defendant, appeals from a final decree in a declaratory judgment proceeding in favor of the plaintiff.

On July 14, 1954, as the result of an ordinance, the City concluded a contract with General Asphalt Paving Company to pave a street. Payment for the work was to be made partly in cash and partly by giving to

the contractor, for him to collect, assessment bills charged against the abutting property owners. These totalled $59,818.58.

Plaintiff is in the business of buying such assessments bills at a discount, and he bought the $59,818.58 in bills at a discount of 4 to 4.5 per cent. He bought them from the contractor and they were assigned to him: he then assigned them to his bank as security for loans. Such assignments are allowed by Section 33 of the Municipal Claims Act of May 16, 1923, P. L. 207, 53 PS §7147. Notice under Section 8 of the Act (53 PS §7142) was sent to the property owners of intention to file municipal claims if the bills were not paid within thirty days. Some, though not all, of the claims were paid, but none was contested on the merits.

The paving was done in two parts, and as each part was completed the City passed an ordinance designed to shoulder the payment for the work itself and to relieve the property owners. Accordingly a net total of $46,712.48 in outstanding bills remained payable to the contractor under these ordinances, after refunds had been made to such property owners as had paid their bills. This net amount was paid to the plaintiff's bank under his assignment, and represented the exact amount of outstanding assessment bills, with no allowance for interest or costs.

While the City was processing these payments, a taxpayer, stimulated by plaintiff, brought an action in equity to enjoin one of the refunding ordinances and declare it invalid: *Altman v. City of Philadelphia*, 393 Pa. 246 (1958), 141 A. 2d 592. This decision upheld the ordinance and by agreement ruled the other. After it was handed down the City paid plaintiff $46,712.48, the aforesaid total of all outstanding bills, without prejudice to his claim for interest and costs. He gave in return orders to satisfy the municipal claims that

had been filed and these were entered by the City.

The City has withdrawn its objection to the action of the court below in allowing plaintiff costs, so there remains only the interest, which the court below also allowed. This amounts to $9,272.21 to the date, October 24, 1958, when the City paid the outstanding assessment bills.

The City concedes that under Section 9 of the Act (53 PS §7143) interest accrued to the holders of the assessment bills from the time of their issuance. It contends, however, that it was ready to pay the bills when City Council passed the ordinance to assume their payment and would have done so if it had not been prevented by the filing of the *Altman* suit. Its position is that since plaintiff was instrumental in bringing the action, interest ceased to run pending the litigation, and cites *Watson v. McManus,* 223 Pa. 583 (1909), 72 A. 1066, and *Park v. Pittsburgh School District,* 354 Pa. 236 (1946), 47 A. 2d 222.

The distinctions in these cases are obvious. In *Altman* there was no injunction, while in *Watson* there was. Also, in *Watson,* the City asserted that interest stopped running from the date of the injunction, not from the imposition of suit: the decree, which was affirmed, directed that interest run from the filing of the referee's report in the suit until the awarding of the injunction. We said, among other things: " 'Where the terms of an obligation comprehend interest, it is inaccurate to say interest is added by way of damages, for it is a substantive part of the debt as much as the principal is': Hummel v. Brown, 24 Pa. 310. . . . After final judgment against it [the City] it could have relieved itself of any obligation for interest by paying the amount of the judgment into court. Not having done this, it is liable for interest." This case therefore stands for the rule that only an injunction, secured by the

plaintiff, stopped the running of interest, though the City could have achieved that result by paying the debt into court.

In *Park* we held that the relationship of debtor and creditor arose only when the exact amount of excess tax to be refunded was finally determined by the court, and that interest would run only from that date. We also said, and it rivets the distinction between our case and *Park*: "Distinction must be made between a case where the right of a taxing authority to collect and retain taxes pending an appeal from an assessment is at issue and where, as in the instant case, interest is sought to be secured on the finally determined amount of overpaid taxes. The former is controlled by statute." In the instant case the latter is controlled by statute.

The City argues that plaintiff should have demanded payment of interest. It says in its brief: "But the very purpose of the demand is to put the City on notice that interest will begin to accrue. The City, in order to protect itself, could either pay the principal or if the legality of payment were in doubt, might pay the money into court (Act of May 16, 1923, P. L. 207, Sec. 14; 53 PS §7182). But since the plaintiff made no demand the City was not obligated to do either." Since the City has conceded the running of interest because it is provided by statute, demand is not needed to start the statutory provision running.

It is true that the contract as well as the Act contains a provision of no recourse against the City by the party holding the assessment bills. There is a line of cases, however, holding that a limitation of liability or a no-recourse clause should not operate to make cities dishonest or prevent their contractees from collecting their just debts. To this we add the idea of interest, since it is an integral part of the debt. The

line of cases adverted to is represented by: *Addyston Pipe & Steel Co. v. City of Corry*, 197 Pa. 41 (1900), 46 A. 1035; *Dime Deposit & Discount Bank v. Scranton*, 208 Pa. 383 (1904), 57 A. 770; *Nolan v. Reading City*, 235 Pa. 367 (1912), 84 A. 390; *Vulcanite Paving Co. v. Philadelphia*, 239 Pa. 524 (1913), 86 A. 1086; *Price, Executors v. Scranton*, 321 Pa. 504 (1936), 184 A. 253.

The court below was therefore right in allowing the plaintiff his interest.

Decree affirmed, costs to be paid by appellant.