# CHARLESTON.

THE HUNTINGTON ENGINEERING COMPANY *v.* E. W. GALLAHER

(No. 5462)

Submitted February 16, 1926.   Decided March 2, 1926.

1. APPEAL AND ERROR—*In Action of Assumpsit, Rejecting Special Plea When Defenses Set Up Thereby Are Provable Under General Issue is Not Reversible Error.*

   In an action in assumpsit it is not reversible error to reject a special plea when the defenses set up thereby are provable under the general issue.   (p. 113.)

   (Appeal and Error, 4 C. J. § 2914.)

2. MUNICIPAL CORPORATIONS—*Charging Special Assessment Against Lot In Name of Record Owner is Proper (Charter of the City of Huntington, § 65 [Acts 1921]).*

   It is proper to charge a special assessment against a lot in the name of its record owner.   (p. 114.)

   (Municipal Corporations, 28 Cyc. p. 1165).

3. SAME—*Unless it Plainly Appears That Assessment Proceedings Were Void, Validity of Assessment Certificates Will be Presumed, in Action to Enforce Collection.*

   In action to enforce the collection of assessment certificates, unless it plainly and manifestly appears that the assessment proceedings were void, the validity of the certificates will be presumed.   (p. 115.)

   (Municipal Corporations, 28 Cyc. p. 1170.)

4. SAME—*Specific Statutory Remedy for Review and Correction of Special Assessments Will Generally be Regarded as Exclusive.*

   Where the statute provides a specific remedy for the review and correction of special assessments, that remedy will generally be regarded as exclusive.   (p. 116.)

   (Municipal Corporations, 28 Cyc. p. 1178 [Anno].)

5. SAME—*Authority Conferred on City of Huntington to Improve Streets and Prorate Costs on Frontage Basis, and to Make Assessments Personal Charges Against Landowners, Held Not to Violate Constitution (Charter of City of Huntington [Acts 1921, C. 11], § 65, Pars. [b], [g], and section 74).*

   The authority conferred on the City of Huntington in Chapter 11, Acts of 1921, to improve its streets, to prorate

the costs of such improvements on a frontage basis, and to make assessments therefor personal charges against the abutting land owners, is not in violation of the Constitution of West Virginia.   (p. 116.)

(Municipal Corporations, 28 Cyc. pp. 1105 [Anno], 1157, 1253.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Cabell County.

Assumpsit by the Huntington Engineering Company against E. W. Gallaher on street improvement assessment certificates.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*George S. Wallace,* for plaintiff in error.
*J. H. Strickling,* for defendant in error.

HATCHER, JUDGE:

In 1921 the city of Huntington caused a part of Norway Avenue to be graded, curbed and paved, and ordered payment therefor to be made by the abutting property owners, on a front foot basis.   The defendant owned four irregularly shaped lots abutting on the Avenue.   On Dec. 13, 1921, the city levied assessments against the abutting property owners, for the cost of the improvement.   Among the assessments were three against defendant in the following amounts: $1259.14 against Tract No. 1, $1903.03 against Tract No. 2, (two of defendant's lots were included in this assessment) and $1941.18 against Tract No. 3.   Certificates for the several amounts so assessed against defendant were issued to the plaintiff on that date.   These assessments were not paid, and in 1925 plaintiff recovered in an action in assumpsit in the circuit court of Cabell County a judgment against defendant for $5396.18, the amount represented by the certificates, with the accrued interest.

The defendant plead *non assumpsit,* and tendered three special pleas, which were rejected by the trial court.   These pleas (a) challenged the constitutionality of that part of the charter of the city of Huntington which made the defendant personally liable for the improvements, (b) alleged that on Dec. 13, 1921, Tract No. 1 was worth not to exceed $100.00

and Tracts Nos. 2 and 3 not more than $500.00, and that the assessments were in excess of the benefits derived, and (c) charged that the assessments were therefore confiscatory of the defendant's property.

The case was tried before the court in lieu of a jury.

At the trial the plaintiff filed the three paving certificates, and proved its ownership thereof and that the amount they represented, with accrued interest, was due and unpaid.

The defendant testified that he did not sign a petition to have Norway Avenue paved, or make any contract with the plaintiff to do this paving; that on Dec. 6, 1921, he executed a deed to one Azel Meadows for a part of the land he owned on the Avenue; that after the execution of the deed all he owned on the East side of the Avenue was "the 264 feet— and the 61 feet in that little triangle, a part of the 407 feet on the West side of the road"; that the value of the 264 feet before paving was $50.00, and after the paving he would not "put it over $200.00 to $300.00"; that the triangular shaped lot of 61 feet on the *East side* of the Avenue was worth $100.00 before paving, and after paving, the witness "expected" it would be worth $300.00; that he sold "this little piece of 338 feet, together with this little piece here of 61 feet, which makes a total of 399 feet, for $1700.00; that he meant he sold "the piece on the West side of the road and the piece on the East side of the road for $1700.00; that the paving had not been done at the time he sold to Meadows; that he received no notice from the city that the paving would be done, but that he thought he saw the newspaper notices of the assessment—"I think I did; yes sir, afterwards."

The deed to Meadows was filed by defendant and showed that the consideration for the two lots was $2000.00, and that the grantee assumed the payment "of the street improvements". One of the two tracts conveyed is described as situate on the South side of the James River and Kanawha Turnpike, and extending 15 poles, 7 links thereon, and the other as situate on the North side of the said turnpike, and extending 20 poles, 12 links thereon. This deed was not recorded until Jan. 26, 1922.

There was no cross examination of the defendant, and at the close of his testimony his counsel avowed that he had at least two other witnesses who would testify to "the same facts as to the value of the land before the improvements, and the value of the land after the improvements," as were set out in the special pleas. The court sustained an objection to the introduction of this testimony. The defendant then filed a written offer of compromise, dated July 30, 1924, which was signed by the defendant, by Meadows, and by one E. L. Miller. The offer stated that the amount of frontage assessed in the three certificates was 1070 lineal feet, which was to be paid for as follows: 170 feet by Miller, 400 feet by defendant, and 500 feet by Meadows. Miller's connection with the affair was not explained. The compromise was not consummated.

At the close of the case the court struck out the evidence for the defendant and found for the plaintiff.

The defendant alleges but does not insist on error in the rejection of his special pleas. The defences raised in the special pleas were maintainable under the general issue. *Sutherland* v. *Guthrie,* 82 W. Va. 419 (421); *Hervitz* v. *Lopinsky,* 92 W. Va. 21 (27). Under our practice his pleas should have been filed, but their rejection was not reversible error. *Bank* v. *Freeman,* 83 W. Va. 477 (479).

Defendant's brief contends that the questions involved in this case are questions of law, which it states as follows:

(1) "The right of a city to assess and make the defendant personally liable for the improvement of a lot not owned by him at the time the assessment was made.

(2) The right of the city to make an assessment against the property of the defendant, which assessment is in excess of the value of the lot, plus the improvements, at the time the assessment is made, and after exhausting the lot, becomes the personal obligation of the defendant."

1

The deed to Meadows was not placed on record until Jan. 26, 1922. Consequently the defendant was still the record owner of the property on Dec. 13, 1921, the date upon which

the assessment was made. "In assessing property, the own-er of record is presumably the true owner." Cooley, Taxation, 4th Ed. Par. 1097. "It has been held proper to assess property for local assessment in the name of the person who appears upon the official records to be the owner thereof. This rule rests upon the general principle that persons dealing with realty are permitted to rely upon the title as it appears of record and are not bound by unrecorded instruments of which they have no notice." Page and Jones, Taxation By Assessment, par. 888. Assessors and boards of equalization in this state go by the record and are not required to make personal inquiry as to the ownership of property. It would be highly impracticable prior to an assessment for any assessment board to ascertain or to take cognizance of the many conveyances which do not come to record promptly. Under Sec. 65 of the Charter of the city of Huntington (Acts of 1921) defendant could have had this assessment corrected by the Board of Commissioners for the city. He could have impleaded Meadows in the present case. His own neglect and inattention are solely to blame that the judgment against him includes the amount recoverable from Meadows.

We therefore hold that the assessment against defendant for the improvements on the land sold to Meadows, made at the time the defendant was still the record owner of the lot, was a proper and legitimate assessment.

2

The law is well established that the right to make a special assessment against land for improvement is based on the theory that special benefits accrue to the land from such improvement. If there are no special benefits to the land, there should be no special assessment against it. It is equally well settled that an assessment in substantial excess of the benefits conferred by the improvement is, to the extent of such excess, unconstitutional. *Norwood* v. *Baker,* 172 U. S. 269; *Holswade* v. *City of Huntington,* 96 W. Va. 124 (134-5); *City of St. Marys* v. *Locke,* 73 W. Va. 30 (36).

The evidence herein, however, is so unsatisfactory, that a clear case of confiscation is not made out by the defendant.

He does not claim to be acquainted with land values. His testimony does not purport to give the *market values* of his lots. He "expects" the land is "worth" certain amounts, or he would not "put it over" a certain estimate. It is true, he stated in regard to Tract No. 1 that he "let it go" for $50.00, but he does not say that $50.00 was all the consideration he received for it, or when, or to whom, or under what circumstances he "let it go." In the compromise offer introduced by defendant he assumed the payment of 200 feet of frontage in Tract No. 1 and Miller assumed payment of the balance of the frontage of that tract. If Miller is the party to whom the alleged sale of Tract No. 1 was made, then Miller instead of purchasing all of the tract bought only a part of it, and instead of $50.00 being the only consideration therefor, the purchaser evidently assumed payment of as much of the assessment as related to the 64 frontage feet. The defendant's special pleas allege that Tracts Nos. 2 and 3 were worth not more than $500.00 on Dec. 13, 1921, and defendant's counsel avowed that at least two witnesses would so testify. Yet defendant's deed to Meadows, made on Dec. 6, 1921, shows a consideration of $2000.00 in money, and the assumption by Meadows of the paving assessment against the property conveyed. And all this consideration for only a part of each of the two tracts! No wonder the trial court rejected such inconsistent testimony.

It may be admitted for the sake of argument that the special assessments against defendant are proven to be in excess of the peculiar benefits to his lots, but even that hypothesis would not entitle him to relief in this case—he should have sought relief in the manner provided by the charter. Every step taken by the city in making the improvement and in assessing the defendant was lawful and carries the judicial sanction of this court. The city had the power under its charter to order the improvement made. Sec. 65, Charter. *Dameron* v. *City of Huntington*, 82 W. Va. 401. It had the right to prorate the cost of the improvement on a front foot basis. Sec. 65, Par. b, Charter. *Heavner* v. *City of Elkins*, 69 W. Va. 255. (See also *Webster* v. *Fargo*, 181 U. S. 394). And finally it had the authority to make the assessments

therefor a personal charge against the abutting owners. Sec. 65, Charter. *City of St. Marys, supra; Werninger* v. *Stephenson,* 82 W. Va. 367. The city charter affords the right to a lot owner to appear before the Board of Commissioners and move the correction of "any apportionment of the asssessment excessive or improperly made." The Board is invested with full power to make any such corrections before entering the assessment. Sec. 74, Charter. The evidence discloses affirmatively that defendant knew this improvement was being made. He refers to it in his deed made to Meadows while the work was in progress. He also saw the newspaper notice relative to the assessment. Yet he did not seek a correction of his assessments before the Board of Commissioners. He offers no reason or excuse in this suit for his indifference and lethargy.

There is confusion and discord in the decisions on some of the propositions arising on special assessments, but there is one principle on which we find judicial harmony. The courts concordantly hold that where a statute provides a specific remedy for the review and correction of assessments, it is the general rule that such remedy must primarily be sought. Beech, Public Corporations, par. 1123, Dillon Municipal Corporations, par. 1681, McQuillen Municipal Corporations, par. 2125, Page and Jones, Taxation by Assessments, par. 1027, Hamilton Special Assessments, par. 680, *Brown* v. *City of Grand Rapids,* 83 Mich. 101; *Garrett* v. *Trustees of the Village of Canandaigua,* 135 N. Y. 436, *Duncan* v. *Ramish,* 142 Cal. 686, *City of Denver* v. *Dumars,* 133 Col. 94 (101), *Byram* v. *Foley, supra, Stark* v. *City of Boston,* 180 Mass. 293, *Stanley* v. *Supervisors of Albany,* 121 U. S. 535 (550), *Brown* v. *Drain,* 112 Fed. 582, *Copp* v. *State,* 69 W. Va. 439, *Nat'l. Bank* v. *Spencer,* 71 W. Va. 678. "The courts and text writers almost uniformly hold that when a statute provides a remedy against excessive, erroneous or improper assessments before some officer or board appointed or elected for that purpose, the party aggrieved must at his peril avail himself of this remedy and cannot resort to the courts in the first instance; and if he neglects to avail himself of the statutory remedy provided,

he cannot assail the assessment in a collateral proceeding nor invoke the equitable powers of the courts for redress.'' *Lumber Co.* v. *Rose,* 87 W. Va. 484 (488).

Our decision herein should not be taken to indicate that a *void* assessment cannot be resisted in a civil proceeding. We make no departure from the holding in *Moundsville* v. *Yost,* 75 W. Va. 224, that a proceeding *wholly void* may be attacked collaterally. But here the assessment is not entirely void under the construction of the evidence most favorable to the defendant. His evidence admits *some* benefits to his property from the improvement. As much of the assessment as equalled the admitted benefits would be valid. The assessment would therefore be valid in part. If not wholly void, but invalid as to only a part, the assessment as a whole would be merely voidable. The rigor of the rule we have announced is not relaxed in favor of *voidable* assessments. ''Where an assessment is not absolutely void, a property owner, who fails to appear and object thereto within the time and in the manner prescribed by the law authorizing the assessment, waives any defect or irregularities therein, and is estopped to deny his liability for the amount of the assessment.'' We are indebted for this quotation to an annotation on page 759 of Vol. 36 Ann. Cases, 1915 B, where exhaustive authority is cited in support of the annotation. Concurrence with the foregoing quotation may be found in the opinion of this court in *Sleeth* v. *City of Elkins,* 87 W. Va. 750. In commenting on the estoppel of the land owner in such case, Judge LIVELY said: ''It is not in all cases that an abutting land owner would be estopped from suit even after the special assessment is laid. If the proceedings were void then he would not be; but if irregular or voidable only, he would be estopped.''

Perceiving no error in the judgment of the circuit court, it is accordingly affirmed.

*Affirmed.*