HARRY K. CURRY *v.* CITY OF KENOVA *et al.*

(No. 7153)

*and*

ANNA E. BUSH *v.* CITY OF KENOVA *et al.*

(No. 7154)

Submitted April 27, 1932. Decided May 3, 1932.

242

*Jess Hammock,* and *Marcum, Lovins & Gibson,* for appellant.

*T. W. Peyton,* for Gerchow & McGinnis.

*Vinson, Thompson, Meek & Scherr,* for Anna E. Bush.

LIVELY, JUDGE:

These two cases involve the validity of street paving assessments against each of the plaintiffs by the city of Kenova.

The city inaugurated a program of street paving under its charter, chapter 16, Acts of 1927. Plaintiff Bush owned lot 16 in block 85, and improvements were made on the two streets abutting this lot, and the assessments against it aggregated $1,065.02. Plaintiff Curry also owned a corner lot, the two streets on which it abutted were improved, and the assessments against his lot aggregated $1,062.33. Each of plaintiff's aver that their respective assessments are exces-

sive and not warranted by the charter; and that the excessiveness of the respective assessments is *ultra vires* and void. By section 78 of the charter, we find that "no assessment herein authorized against or upon any property for any local improvement shall in the first instance exceed·in amount twenty-five per centum of the value of such property after the improvement is completed." The court found as a fact that Curry's lot, after the improvement, was worth $1,500.00 and that the legal extent of assessment for paving was $375.00, or 25% of the said value, and validified that part of the assessment but decreed as void and unenforceable the remainder of the assessment, amounting to $687.33. The court found as a fact that plaintiff Bush's lot was worth $1500.00 when the improvement was completed and that the maximum legal assessment for improving streets abutting thereon amounted to $375.00, and that the remainder of the assessment, $690.02, was void and unenforceable, and so decreed.

On March 19, 1928, the city entered into contract with appellees, Gerchow and McGinnis, partners, for the street improvement, and when the work was completed by them, certificates were issued and delivered to them for the assessment against the two plaintiffs as above set out. The contractors were made parties defendant in the two suits and answered, denying plaintiffs' contention against the excess of assessments. But by way of affirmative relief against the city, they alleged that under their contract with the city, the latter was to deliver to them valid and legal assessment certificates against the lots of land to be paved in an amount equal to the contract price; and that therefore they were entitled to have and collect the entire amount of the certificates from the city in the event that the court should be of opinion that certificates exceeded in amount the lawful assessment; and prayed for judgment against the city for the amount of the certificates which plaintiffs were not required to pay, in the event that the court should relieve the lot owners from payment of any part of the certificates.

The city answered the cross-bill, and the cross-answer of the contractors and averred that it was not liable in any

event for any of the assesments which it had made, relying upon section 59 of the charter act of 1927, which provides: "The city of Kenova shall not be liable for the payment or collection of any assessments made by virtue of this act." The decrees sustain the contractors in their prayer for relief against the city and entered judgment against the city for the excess amount of the two certificates, above set out.

The city has appealed from the decrees, and there are two major questions for decision. Did the court err in holding that the assessment against each of the two lots could not exceed $375.000, or 25% of the value of the lots after the improvements were made? And, did the court err in granting to the contractors the relief prayed for in their cross-bill answer?

On the first question, the city argues that plaintiffs are estopped from attacking the assessments, because the proceedings for the improvements were regular, and neither of them made protest until after the assessments were made and certificates issued, and therefore they cannot attack the assessments collaterally by this suit. While it is contended that plaintiff Bush did not know the improvements were in progress, her want of knowledge of that fact, if it be a fact, would not excuse her, for the notices of the assessments were duly made by publication and appear to be in substantial compliance with the charter. It appears that Curry did protest against his assessment. But as the plaintiff could rely upon the presumption that the ultimate assessments against them would be legal and not exceed the authority of the city to impose under the charter, when the city exceeded its power and made an illegal assessment, its act was *ultra vires,* unenforceable and void to that extent. *Moundsville* v. *Yost,* 75 W. Va. 224, 83 S. E. 910; *Engineering Co.* v. *Gallaher,* 101 W. Va. 110, 132 S. E. 866. The city, being a creation of the legislature, is limited to the powers expressly given or necessarily implied from the legislative act. The people of that city in obtaining a charter with relation to street improvements were careful to provide that they should not be improved out of their properties by any street improvement beyond a stated percentage of the value of their

properties. The city council being inhibited from so doing, plaintiffs could presume that the council would stay within the inhibition. If the assessments had been excessive, erroneous or improper, and within the power of the council to make, then it was the duty of plaintiffs to appear and make protest under section 63 of the charter, but being *ultra vires* and void as to that portion in excess of 25% of the value of the lots at the time of the improvement, plaintiffs could treat the void part as such, and are not estopped of their right to resist the void act if and when attempted to be enforced. 44 C. J. 701, 702, sec. 3179. It is uniformly held that where the statute provides a remedy against excessive, erroneous or improper assessments before some city authority, the party aggrieved must pursue that remedy before appealing to the courts for redress. *Mortgage Co.* v. *Lory,* 109 W. Va. 310, 154 S. E. 136; *Engineer Co.* v. *Gallaher, supra.* The point in this case is that the excess of the assessments over 25% of the value of the property is void, and the failure to protest against a void act does not estop one from attacking it by injunction or other process in the courts. McQuillin, Municipal Corporations, (2d Ed.), Vol. 5, secs. 2246, 2277. "Frequently the amount of an assessment for local improvements is limited by statute to a certain percentage of the value of the individual lots or tracts assessed. Where property is assessed in excess of the limitation so fixed, it is a taking of property without due process of law and the assessment is void as to the excess, but only to that extent." 44 C. J. 640, sec. 3074. See *Lumber Co.* v. *Rose,* 87 W. Va. 484, 488, 105 S. E. 792.

We now come to the second major question. The city says that the contractors cannot recover against it under the contractors' answer seeking affirmative relief against it, because the charter, which is read into the contract, provides that the city "shall not be liable for the payment or collection of any assessments made by virtue of this act." Shall the contractors lose the money which they have expended on the city streets? Shall the city avoid payment for the benefits derived under the contract? The equity is in favor of the contractors, and the city having received value should be

made to pay therefor, unless the city is without power to do so. We construe the section above quoted on which the city relies, to mean that the contractor shall look only to the landowner for payment for every certificate *legally* issued under the act. The contractor would naturally assume that the city was acting within its powers in the issuance of certificates and that when so done they would be valid liens upon the lands improved; that the city had ascertained and correctly fixed the values of the respective lots, and would not issue certificates in excess of 25% of the value. A person contracting with a municipality is charged with knowledge of its powers, and generally cannot hold the municipality liable for contracts in excess of its power. But in making the instant contract and accepting the certificates against plaintiffs' lots, it was not contemplated that the city would exceed its power, and the contractors could assume that the certificates were valid. There was nothing to put them on notice, as there was to the contractor in *Holswade* v. *City of Huntington,* 96 W. Va. 124, 122 S. E. 449, relied upon by the city. In that case, the certificates were contracted to be issued against property owned by the state which could not be enforced and its payment would depend· upon the voluntary act of the state. The assessment against the state's property would not have been void, nor would the certificate if accepted by the contractor be void. Such was the situation in *City of Enid* v. *Warner-Quinlan Asphalt Co.,* (Okla.) 161 Pac. 1092, and it was held that the contractor could not recover against the city. Both the contractor and the city knew that the assessment against the property of the United States along which the improved street ran could not be enforced, and the contract provided that the city would not under any conditions, be liable under the contract. The contractor acted at his peril.. Generally, "if an assessment proves invalid, the city is liable to the contractor for the cost of the improvement, or the amount of the void assessment certificates, unless it is expressly exempt from such liability by charter or contract." 28 Cyc., p. 1059, and authorities there cited. In the instant case, the charter means that the city shall not be liable for any assessment *authorized*

by virtue of that act—a legal assessment. The city has attempted to discharge its contract by the delivery of an obligation judicially determined to be void in part. The assessment is void as to that part. Counsel for the contractors have cited many cases holding in effect that where a city has power to pave its streets and pay therefor by general levy (which power the city of Kenova has under its charter) and it issues bonds or paving certificates in payment therefor which are void for want of power, or for want of notice to the abutting owners, or the like, then the city is liable to the contractors for the work done in good faith. In *Hitchcock* v. *City of Galveston*, 96 U. S. 727, 24 L. Ed. 659, where the bonds issued were alleged to be invalid because of lack of lawful authority to issue them, the court said that the contract was not wholly void even if the bonds were valid, and "if payment cannot be made in bonds because their issue is *ultra vires* it would be sanctioning a rank injustice to hold that payments need not be made at all. Such is not the law. * * * Having received the benefits it cannot object." See *Bruning* v. *City of New Orleans*, 122 La. 316, 47 So. 624; and *Barber Asphalt Co.* v. *City of Harrisburg*, 64 Fed. 283, 29 L. R. A. 401; *Electric & Power Co.* v. *Fort Dodge*, (Iowa) 89 N. W. 7, 10, and cases there cited; and *Iowa Pipe & Tile Co.* v. *Callanan*, 101 N. W. 141. The city has had its streets paved, and by an *ultra vires* act has attempted to make the abutting landowners pay in full therefor; the contractor accepted the certificates in good faith that they were legal obligations of the property owner and would be paid. The city having reaped benefits by its void act, cannot equitably interpose that act to defeat payment under its contract. The charter protects it against payment of assessments lawfully made thereunder.

The decrees in each cause will be affirmed.

*Affirmed.*