WALTER F. BURGESS *v.* CITY OF CAMERON

(No. 7333)

Submitted September 13, 1932.    Decided October 4, 1932.

(Rehearing denied December 6, 1932.)

128

*Martin Brown,* for plaintiff in error.
*Chauncey D. Hinerman,* for defendant in error.

MAXWELL, JUDGE:

Plaintiff is a contractor. The official records of defendant disclose ordinances passed by its council providing for the "resurfacing of a portion of Maple Avenue" at 90c per square yard for retread and, for cement curbing, $1.00 per lineal foot; further, that the city solicitor be instructed to prepare a contract between the city and plaintiff upon that basis. The contract was not prepared.

Plaintiff completed the project at a cost of about $900.00. Of this amount $357.80, covering the said curbing and certain patch-work on another street, was paid him by the city, leaving a balance of $605.00 which is the basis of plaintiff's action against defendant. The case was tried by the circuit court of Marshall County in lieu of a jury. Upon conclusion of plaintiff's evidence a motion by defendant to strike out the same and find for defendant was sustained. Writ of error was awarded plaintiff.

Defendant plead the general issue and filed special pleas. In the special pleas it is averred among other things that plaintiff should not recover because there was no written contract between the parties; that the suit is based upon an alleged "street paving contract" and not for "current and incidental expenses of the city"; that the contract, if any, is void because the city council did not advertise for bids as provided in the city charter; and that the ordinances and resolu-

tions purporting to authorize the resurfacing of Maple Avenue were not read at two consecutive meetings of the council as required by the charter.

It is not disputed that the city made a payment to plaintiff of $357.80 upon completion of the project, thus impliedly accepting the work. The portion of the street resurfaced has been used by the city since its completion. Though there was no written agreement between the contractor and the city, it is not denied that there was a verbal agreement. A contract for street paving need not be in writing. *Harrold* v. *City of Huntington*, 74 W. Va. 538, 82 S. E. 476. These matters, however, become subordinate to a more serious feature of the case, upon which we believe the decision must turn.

Section 39 of the city charter reads:

> "The council shall have the authority to provide that any street, avenue or alley or any portion thereof, between the curbstones shall be macadamized, paved, repaved or resurfaced with brick, concrete, asphalt, or other suitable material, upon the lowest and best terms obtainable, after advertisement for four weeks in one or more newspapers in the city, for bids and proposals for the work; and two thirds of the cost of such * * * paving, repaving or resurfacing * * * shall be assessed to the owners of lots * * * fronting or abutting on such street."

That there was no advertising for bids as required by the foregoing section, is not disputed. Plaintiff contends, however, that inasmuch as defendant has continued to use the street and has paid a part of the contract price, it has received the benefits of the work and has ratified the contract; that it is estopped from denying liability for the unpaid balance of his claim. It is also a contention of plaintiff that the city council in providing for the resurfacing of Maple Avenue had authority to do the work under either section 39 or section 15 of the city charter. We cannot subscribe to that view. Section 15 provides in part:

> "The council of said city shall have power to lay off, vacate, close, open, alter, grade and keep in good repair the roads, streets, alleys, pavements, * * * for the use of the citizens or of the public, and to improve

and light the same, \* \* \* and to provide a revenue for said city for municipal purposes, and to appropriate such revenue to its expenses, and generally to take such measures as may be deemed necessary or advisable to protect the property, public and private, within the city; to preserve and promote the health, safety, comfort and well-being of the inhabitants thereof.''

Now while there may be a zone of uncertainty between that which is clearly a repair job under section 15, and that which is clearly a construction job under section 39, we do not think that the resurfacing of a street for its entire width and for a distance of more than 300 feet, as in this case, can reasonably be said to be a mere repair job within the meaning of section 15.

It appears from the record that the owners of properties abutting Maple Avenue petitioned the council to provide for the resurfacing of a portion of that street. It further appears that it was the understanding between the council and the property owners that two-thirds of the cost of the work was to be paid by the latter and one-third by the former, the city to pay its proportionate share out of the general fund. Section 39 of the charter is the only section which provides that a proportionate part of the cost of resurfacing a street may be assessed to abutting property owners. It is very clear, therefore, that in negotiating for the resurfacing of Maple Avenue, the council was proceeding under section 39 and not section 15.

In providing for advertisement for bids, did the legislature have in mind competitive bidding? And, is the provision mandatory? Both questions must be answered in the affirmative. This section does not confer a privilege, but imposes a duty, upon the council. The section prescribes but one method of contracting for the resurfacing of the city streets or portions thereof. ''Whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative, viz: that the thing shall not be done otherwise.'' 19 Cyc. 26. *Expressio unius est exclusio alterius.* In 2 Lewis' Sutherland Statutory Construction, p. 1137, it is said: ''What the law requires for the protection of the taxpayer \* \* \* is mandatory

and cannot be regarded as directory merely." The council had no right to disregard the plain provisions of the charter in contracting, because—"The requirement of competitive bidding in the letting of municipal contracts is uniformly construed as mandatory * * * and non-observance will render the contract void and unenforcible." McQuillen, Municipal Corporations (2d Ed.), Vol. 3, sec. 1287. In accord: Dillon, Municipal Corporation (5th Ed.), Vol. 2, sec. 801; Tiedeman on Municipal Corporations, sec. 172; Abbott, Municipal Corporations, sec. 262; Donnelly, The Law of Public Contracts, sec. 112; Am. & Eng. Encyc. of Law (2d Ed.), Vol. 20, page 1165; and 44 Corpus Juris, sec. 2490; *City of Moundsville* v. *Yost,* 75 W. Va. 224, 83 S. E. 910; *Twohy Bros. Co.* v. *Ochoco Irr. Dist.,* 108 Ore. 1, 210 P. 873, 216 P. 189; *Wait* v. *So. Oil & Tar Co.,* 209 Ky. 682, 273 S. W. 473; *Anderson* v. *Fuller,* 51 Fla. 380, 41 So. 684; *McCloud* v. *City of Columbus,* 54 Ohio St. 439, 44 N. E. 95; *Chippewa Bridge Co.* v. *City of Durand,* 122 Wis. 85, 99 N. W. 603; *Ardrey* v. *City of Dallas,* 13 Tex. Civ. App. 442, 35 S. W. 726; *Flinn* v. *City of Philadelphia,* 258 Pa. St. 355, 102 A. 24; and *Thrasher* v. *City of Kirksville,* 204 S. W. (Mo.) 804. The reasons for the requirement of competitive bidding are thus stated: "Such requirements are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts, and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers * * * and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest. McQuillen, *supra,* sec. 1286. In accord: Am. & Eng. Encyc. of Law, *supra;* 44 Corpus Juris, *supra;* and Donnelly, *supra,* sec. 113. In an action on such contract, made in violation of the requirements of the charter, the city may plead its illegality in defense. Dillon, *supra;* Tiedeman on Municipal Corporations, *supra; Twohy Bros. Co.* v. *Ochoco Irr. Dist., supra.* "And where there is a statute or charter provision exacting competitive bidding, the municipality cannot provide by ordinance that, for a certain kind of work, the contractor shall be paid a fixed price without reference to any proposals or bidding." McQuillen, *supra,* sec. 1287.

The fact that the plaintiff has fully performed the contract and substantial benefits have thereby been conferred upon the city in no wise alters the rule. ''The mere fact that the municipality has received the benefits of the contract which has been performed by the other party, does not make the municipality liable, either on the theory of ratification, estoppel, or implied contract, in order to do justice to the other party by paying the reasonable value of the property or services.'' McQuillen, *supra*, sec. 1283. To the same effect: Am. & Eng. Encyc. of Law, *supra*. ''If a public corporation has power to ratify a contract, it can ratify it only by acts as formal as those which were necessary to enter into the original contract in the first instance.'' 3 Page on the Law of Contracts, sec. 1967. Accord: *Chippewa Bridge Co.* v. *City of Durand, supra; Twohy Bros. Co.* v. *Ochoco Irr. Dist., supra;* and *La France Fire Engine Co.* v. *City of Syracuse,* 68 N. Y. Supp. 894. The same rule obtains where part payment has been made: Tiedeman, *supra*, sec. 170; *Town of Durango* v. *Pennington,* 8 Colo. 257, 7 P. 14, and *Twohy Bros. Co.* v. *Ochoco Irr. Dist., supra.*

The courts under such facts and circumstances as here involved do not permit a recovery even under a *quantum meruit.* There can be no implied promise to pay the value of goods received or labor performed where there is no power to contract, except in the manner and with the safeguards prescribed in the charter. McQuillen, *supra*, sec. 1283; *La France Fire Engine Co.* v. *City of Syracuse, supra;* and *Chippewa Bridge Co.* v. *City of Durand, supra.*

The authorities are in agreement upon the rule that one contracting, as in the case at bar, with a municipality is charged with a knowledge of the limitations imposed upon it by charter: ''The person or company making a bid, or entering into a contract with a municipality, acts at his peril. He is supposed to know the law—a very violent presumption it may be, but none the less effective. He is persona non grata with the courts, which must look to the protection of the public. If the contract is one which the statute or charter requires to be let on competitive bidding, and it is awarded without such bids, the contractor who has duly performed such contract cannot recover from the municipality, in most jurisdictions, notwith-

standing the municipality has accepted and retains all the benefits of the contract." McQuillen, *supra*, sec. 1285. The following cases apply the rule: *Town of Durango* v. *Pennington, supra; Twohy Bros. Co.* v. *Ochoco Irr. Dist., supra; McCloud* v. *City of Columbus, supra;* and *Santa Cruz R. P. Co.* v. *Broderick,* 113 Cal. 628, 45 P. 863.

Published notice for competitive bids was provided by the legislature as a safeguard to the taxpayer against private avidity and official indifference. This beneficial provision has no value if it can be disregarded. The evils which imperatively demand these restrictive statutes are of common notoriety. They can be held in check only by regarding as mandatory the statutory provisions designed to circumvent them. The law must be upheld and applied even in a case such as is here presented, where there is no intimation that the contractor did not act in good faith. However inculpable a claimant may be, the law can not be ignored. Therefore we affirm the judgment.

*Affirmed.*

MAXWELL, JUDGE, (On petition for rehearing):

On petition for rehearing much emphasis is placed on our holding in the case of *Curry* v. *City of Kenova,* 112 W. Va. 241, 164 S. E. 249. It is said that the decision in the case at bar is not consistent with the decision in that case. There, paving was done under a city charter which provided that no assessment for public improvements should exceed in amount "twenty-five per centum of the value of such property after the improvement is completed." Paving certificates were issued against two separately owned properties for more than twenty-five per centum of their value. The property owners were held not liable on the certificates for excess above one-fourth the value of the lots. The city was held liable for the excess although there was a provision in the charter of the city that the city "shall not be liable for the assessment or collection of any assessment made by virtue of this act." Judge Lively, speaking for the Court, said that the assessments "being *ultra vires* and void as to that portion in excess of 25 per cent. of the value of the lots at the time of the improvement, plaintiffs (lot owners) could treat the void part

as such, and are not estopped of their right to resist the void act if and when attempted to be enforced.'' He further said: ''We construe the section above quoted on which the city relies to mean that the contractor shall look only to the landowner for payment for every certificate *legally* issued under the act.'' And further: '' * * * the charter means that the city shall not be liable for any assessment authorized by virtue of that act—a legal assessment. * * * · The city has had its streets paved, and by an *ultra vires* act has attempted to make the abutting landowners pay in full therefor; the contractor accepted the certificates in good faith that they were legal obligations of the property owner and would be paid. The city, having reaped benefits by its void act, cannot equitably interpose that act to defeat payment under its contract. The charter protects it against payment of assessments lawfully made thereunder.''

The contract involved in that case was legal. The paving contractors having fulfilled their obligations under a valid contract, the city was held liable thereunder for so much of the two paving certificates involved as was *ultra vires* and void as against the property owners affected. The contractors had a right to assume that the certificates issued to them by the city were valid. There was involved a question of fact about which the contractor was not supposed to know. In the instant case, however, the difficulty is more deep-seated. The case does not turn on a question of fact but on a question of law. The requirements of the charter were known of all men. The contract was void *ab initio* because contrary to the charter requirement of competitive bidding for construction work. In such situation there can be no action on the contract nor on a *quantum meruit.* (For these propositions see authorities cited in opinion, *supra.*) Contractors dealing with municipalities must take note of the limitations of their power. The excellence of the character of a contractor and his exemplary motives do not change the law.

*Rehearing denied.*