CITY OF ELKINS *v.* T. B. STICKLEY *et al.*

(No. 7531)

Submitted September 20, 1933. Decided September 26, 1933.

*E. L. Maxwell,* for appellants.
*S. T. Spears,* for appellee.

HATCHER, JUDGE:

This appeal presents the protest of property owners against a special sewer assessment, and a judgment confirming it.

In 1925, the city of Elkins, after securing a right of way for a sewer through a lot owned by the defendants constructed the sewer through the central portion of the lot for a distance of 424 feet. The sewer does not run with the street which abuts the lot, but enters the street from an alley opposite the lot, and crosses the street directly into the lot. A special sewer assessment of $604.51 was made against the lot. That sum was two-thirds of the cost of constructing 424 feet of the entire sewer. The circuit court confirmed the assessment, entered a personal judgment against the defendants, and decreed a sale of the lot.

A personal judgment for such an assessment is valid when authorized by the legislature. *Engineering Co. v. Gallaher,* 101 W. Va. 110, 115-116, 132 S. E. 866. The city charter provides that the assessment for a sewer shall be laid ''against the real estate benefited thereby which bounds or abuts thereon,'' and that collection of the assessment shall be made ''as provided for the collection of state taxes assessed against real estate in said city.'' Under Code 1923, chapter 30, section

33, the collector of state taxes was given the right to proceed "against the person liable therefor", but this right lapsed "after five years from the time the action accrued." The assessment was laid on March 5, 1925, and this suit was brought to December Rules, 1931. Consequently, the city's right to a personal judgment was then barred.

The research of both counsel and this Court has found no case similar to this; so we look to the charter alone. It contains the following assessment provisions:

> "And for the purpose of paying the expenses and cost of any such sewer * * * the said Council may levy a special assessment for the cost thereof against the real estate benefited thereby which *bounds or abuts* thereon. * * *
>
> "But in the case any sewer constructed under and along any street, alley or road * * * the bounding and abutting real estate on each side of the street or alley shall be held liable to pay one-third of the costs of such sewer, and the residue of the cost thereof shall be paid out of the City Treasury. * * *
>
> "Provided that in case of the construction of any sewer the amount to be assessed against the abutting property shall be ascertained by taking one-third of the total costs of such sewer including mains and laterals on all the streets or alleys or through private property which enters into such mains, and together make one complete sewer line, and from one-third of the total cost and total length of such sewer the cost per foot shall be ascertained. This sum shall then be multiplied by the number of feet any lot abuts thereon which is liable to assessment under this act * * *."

The theory of the instant assessment is that since the sewer line divides the lot into two sections, each section abuts on the sewer and each section should pay one-third of the costs, per front foot. The brief for the city says: "We can see no difference in equity between the position of defendants here than there would be in case they owned two lots directly opposite each other on a street or alley through which the sewer was laid. In that case, they would be liable for two-thirds of the costs."

The basis for the special assessment as declared by the charter is *benefit to property*. It would seem that the lot

herein is benefited by the present location of the sewer as much as if it had been located in the street which abuts the lot. When a lot is benefited by a municipal improvement it should not escape assessment unless it is excluded by the charter. No benefited property is excluded under the Elkins charter which "bounds or abuts" on the sewer. The ordinary use of the quoted words implies juncture at a border or boundary. But they are defined also as implying *contact* generally. See Webster's New International Dictionary. We recognize that the rule of strict construction is applied to city charters. *City of Fairmont* v. *Wiley,* 68 W. Va. 308, 313, 69 S. E. 802. But that rule should not be followed to the extent that it would defeat the obvious purpose of the legislature. "Whenever the meaning of a word as used in a statute or ordinance becomes the subject of a controversy in a legal proceeding, the ascertainment of its strict primary signification is not a matter of so much importance as it is to discover the sense in which it was used by the legislative body, for the latter (sense) must control although the word has been used without regard to its appropriate and primary meaning." *Springfield* v. *Green,* 120 Ill. 269, 275, 11 N. E. 261, 263. Courts generally have refused to give the words *bounding* and *abutting* a restricted meaning where a broad definition was indicated by the lawmakers. *Cohen* v. *Cleveland,* 43 Ohio 190, 196-7, 1 N. E. 589; *Allman* v. *Dist. of Columbia,* 3 App. Cas. D. C. 8; 25 Am. & En. Ency. Law 1190-1; 1 C. J. 376; McQuillan, Municipal Corporations (2d Ed.) 2205. Wherefore we are of opinion that the words "bound or abut" were intended to apply to a lot traversed by a sewer as in the instant case.

We must regard the defendant's lot, however, as an entity. The fact that the sewer is located through the center of the lot is incidental. That fact alone gives the city no greater right than if the sewer were located just a few feet inside an exterior boundary line. The sewer pipe occupies only a small space, and is below the surface; so the continuity of the lot is not broken. A legal severance of property is not made by mere easement over it. Therefore we hold that the lot is subject to assessment only for one-third of the total foot cost of the sewer multiplied by 424 feet.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*