664 S.E.2d 541

**Bernard J. FOLIO and Grandeotto, Inc., Plaintiffs Below, Appellants,**

v.

**HARRISON–CLARKSBURG HEALTH DEPT., et al., Defendants Below, Appellees.**

No. 33707.

Supreme Court of Appeals of West Virginia.

Submitted April 16, 2008.

Decided June 17, 2008.

Jerry Blair, Jr., Esquire, Blair, Conner & McIntyre–Nicholson PLLC, Clarksburg, for Appellants.

Michael J. Florio, Esquire, Florio Law Offices, Clarksburg, for Appellees.

PER CURIAM:

The instant action is before this Court upon the appeal of Bernard J. Folio and Grandeotto, Inc.[1] [hereinafter "Appellants"] from a March 13, 2007, order granting Harrison–Clarksburg Health Department's and Harrison–Clarksburg Board of Health's[2] [hereinafter "Appellees"] Motion for Summary Judgment. On appeal, the Appellants allege that errors were committed by the circuit court in its finding that no legal announcement of competitive bidding is necessary when a local combined board of health seeks to relocate its facilities; by finding that no genuine issue of material fact existed regarding whether constructive fraud existed; and by ruling that actual fraud had to be proven to maintain an action. The Appellees conversely allege that competitive bidding was not required, and there was no evidence of constructive fraud. This Court has before it the petition for appeal, all matters of record and briefs and arguments of counsel. For the reasons expressed below, the March 13, 2007, order of the Circuit Court of Harrison County is affirmed.

---

1. Grandeotto, Inc. is a closely-held corporation owned primarily by Bernard J. Folio and his children. Grandeotto holds and manages real estate in the City of Clarksburg and elsewhere in West Virginia.

2. The Harrison–Clarksburg Board of Health is a "combined local board of health" existing under the provisions of West Virginia Code § 16–2–1 et seq. (2000). The Harrison–Clarksburg Health Department "means the staff of [the Harrison–Clarksburg Board of Health]." W. Va. Code § 16–2–2(n).

## I.

### FACTUAL AND PROCEDURAL HISTORY

The instant action arose out of the effort of the Appellees to acquire building space for the relocation of its offices.[3] In response to newspaper publicity of its intent, the Appellees received approximately twenty proposals, including one from Appellants offering to lease a building recently occupied by Rite–Aid. Although the Rite–Aid building was one of the three finalists, the Appellees decided to lease the Toothman Rice building, another finalist.[4]

The Appellants commenced action in the Circuit Court of Harrison County challenging the process the Appellees used in selecting the new location for their facilities, seeking to have the Appellants' decision annulled and its building selection process "redone." In its complaint, Appellants alleged the following: 1) that the chairperson of the Board appointed by the City of Clarksburg was at all relevant times a nonresident of the City, thus making the Appellants' lease of the Toothman Rice building "voidable as emanating from an illegally constituted entity"; 2) that a conflict of interest existed because Main Street Realty, Inc., the owner of the Toothman Rice building, was then represented by the same law firm that then represented the City of Clarksburg, and a partner of that firm was then the Secretary/Treasurer and possible part-owner of Main Street Realty, Inc.; 3) that the rating scores for the proposed properties were arbitrary and capricious because the Appellants established an arbitrary scoring procedure for which there was no standard or training provided or assessment of criteria agreed for assigning said scores; and 4) that the Appellants' lease of the Toothman Rice building at a rental amount significantly more expensive than the equivalent or superior property proposed by the Appellants and by others constituted malfeasance and a breach of the Appellees' fiduciary duty and the public trust.

■ Appellees initially filed a Motion to Dismiss which was converted into a Motion for Summary Judgment. The circuit court dismissed one claim against the Appellees concerning the composition of the organization's Board at the time the tentative relocation decision was made. However, the circuit court ruled that the substantive claim regarding the selection and relocation of the Health Department facilities could only be dismissed upon proof of the absence of "fraud, collusion, or palpable abuse of discretion."[5] The court permitted additional time for discovery to be conducted. At the close of discovery, Appellees filed a renewed Motion for Summary Judgment based on the absence of evidence of fraud, collusion, or palpable abuse of discretion. After a hearing on the issues raised in the parties pleadings, the circuit court granted Appellees' motion, finding that no such evidence existed.[6] It is from that order that Appellants now appeal.

## II.

### STANDARD OF REVIEW

■ "A motion for summary judgment should be granted only when it is clear that

---

3. Prior to April 2001, Appellees occupied rent-free facilities at the Harrison County Courthouse. Due to lack of space, the Appellees were required to relocate offices to the Policano Building in Clarksburg. When their rent increased on April 1, 2005, relocation again became necessary.

4. Among other reasons, Appellees assert that their decision was precipitated by the fact that the chosen property was essentially ready for occupation, whereas the Appellants' property still needed to be built out, at the Appellees' expense. The Appellees allege that because they would have nothing to show for any improvements made to the property at the end of the lease, and because they risked incurring a dramatic rental increase upon making changes to

the property, they did not select Appellants' property.

5. "A court will not ordinarily interfere with the action of a public officer or a tribunal clothed with discretion, in the absence of a clear showing of fraud, collusion, or palpable abuse of discretion." Syl. Pt. 2, *Bane v. Bd. of Educ. of Monongalia County*, 178 W.Va. 749, 364 S.E.2d 540 (1987)(internal citations omitted).

6. The order entered by the circuit court is commendable. The twenty-nine page order, containing detailed findings of fact and conclusions of law, thoroughly sets forth the evidence developed during the discovery process.

there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Co. v. Federal Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Furthermore, "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Mindful of these standards, we proceed to consider the arguments of the parties.

## III.

## DISCUSSION

### A. Competitive Bidding

■ In their first assignment of error, Appellants contend that the circuit court erred in finding that the Appellees were not required to publicly solicit competitive bids or advertise for potential properties to relocate the Health Department facilities. While Appellants concede that West Virginia Code § 16-2-1 et seq. (2000), the statute under which the Board of Health was created and established and under which it is operated and maintained, does not require Appellees to solicit competitive bids for office space through a published source,[7] they argue that there are three reasons why the Appellees should have been required to do so: 1) procurement constraints of its sources of funding; 2) procurement restraints of its creating agencies; and 3) fair and open government.

Appellants first contend that the Appellees are a recipient of local, state and federal funds,[8] and that as a consequence, it must use a procurement process that is at least as comparatively rigorous as that of the funding agency. However, Appellants do not identify the local, state and federal agencies from whom the Appellees allegedly receive funds, do not reveal what process any such agencies must follow in acquiring rental office space,[9] and do not provide any legal basis for their claim that at a minimum the Appellees must use the same procurement process as its funding agencies, whatever they may be.[10]

In support of their argument, Appellants reference *West Virginia Utility Contractors Association v. Laidley Field Athletic and Recreational Center Governing Board*, 164

---

7. The absence of such a requirement in West Virginia Code § 16-2-1 et seq. is in contrast with a large number of other statutes which do require competitive bidding, some solicited through published public notice. These are but a few examples: W. Va.Code § 3-4A-5 (1982) (requiring county commissions to acquire vote recording devices "by sealed competitive bids."); the West Virginia Fairness in Competitive Bidding Act, W. Va.Code § 5-22-1 et seq. (2004) (requiring, except as provided therein, the state and its subdivisions to "solicit competitive bids for every construction project exceeding twenty-five thousand dollars in total cost."); W. Va.Code § 5A-3-10(b), (d) (2006) (requiring the Purchasing Division of the Department of Administration to "solicit sealed bids for the purchase of commodities and printing which is estimated to exceed twenty-five thousand dollars," and to solicit such bids "by public notice ... published by any advertising medium the director deems advisable."); W. Va.Code § 12-1-2(d) (2005) (requiring "[t]he State Treasurer [to] solicit state depositories for disbursement accounts through competitive bidding by eligible banks in the state."); and W. Va.Code § 33-20F-6(b) (2003) (requiring any contract entered into by the board of directors of a Physicians Mutual Insurance Company for the administration of some or all of the affairs of the company between July 1, 2004, and June 30,

200, to be awarded "by competitive bidding ...").

8. Appellants have not provided any facts supporting this allegation.

9. Appellants claim that the charter of the City of Clarksburg would require the city "to solicit competitive bids in acquiring a lease to third-party-owned real estate." However, the passage Appellants quote from the charter imposes no such requirement. Rather, it simply voids contracts and purchases by any city officer, department or agency not made "in conformity with all applicable provisions of general law, this Charter, and with all rules and regulations fixed by ordinance, from time to time, concerning a dollar amount for which competitive bids shall be required for contracts for *improvements or purchases of materials, supplies and equipment.*" (Emphasis added).

10. Appellants would have this Court simply assume that each of the Appellees' funding agencies is required to solicit bids for acquiring office space. This Court cannot decide cases on the basis of assumptions, cannot assume that all of the Appellees' funding agencies are bound by an identical procurement process, and cannot make public policy by imposing upon the Appellees the same requirements as may be statutorily imposed upon an agency from which it receives funds.

W.Va. 127, 260 S.E.2d 847 (1979), and *Burgess v. City of Cameron*, 113 W.Va. 127, 166 S.E. 113 (1932). However, we find these two cases wholly irrelevant to Appellants' claim.

In *Laidley Field*, the plaintiffs' complaint alleged that they had a legal right to have contracts of the Laidley Field Board submitted for competitive bidding. However, the issues before this Court were whether the plaintiffs had standing to seek a declaratory judgment on the issue, and whether a justiciable controversy existed. 164 W.Va. 127, 260 S.E.2d 847. This Court did not decide whether the Laidley Field Board was required to submit the contract at issue to competitive bidding. That issue was left for the circuit court to decide upon remand. *Id.* at 131, 260 S.E.2d at 850. As for Appellants' reliance on *City of Cameron*, competitive bidding was required for the resurfacing of streets in that case because it was specifically imposed upon the city by its charter. 113 W.Va. 127, 166 S.E. 113. Such is not the case before us. Appellants have not cited any legal authority or precedent requiring legal advertisements or competitive bidding in these specific circumstances, nor do they cite any legal authority that would cause us to reverse the circuit court's conclusion.[11] Accordingly, the decision of the circuit court on this issue is affirmed.

As for Appellants' two remaining arguments that the Appellees are required to publicly solicit competitive bids or advertise for potential properties due to procurement restraints of its creating agencies and the principles of fair and open government, we disagree. Appellants cited no legal authority or precedent imposing a statutory requirement upon the Appellees' creating agencies to solicit competitive bidding in acquiring

office rental space. Rather, they simply assume that such is required. Furthermore, recognizing separation of powers principles, it is not for this Court to judicially adopt public policy that "fair and open government" requires the solicitation of competitive bids for rental office space, when that decision lies exclusively with the legislature. The Legislature, not this Court, is the appropriate forum for that argument. For these reasons, the decision of the circuit court on these issues is also affirmed.

### B. Fraud

Appellants also allege that the circuit court erred in granting Appellees' summary judgment motion because genuine issues of material fact existed regarding whether constructive fraud existed, and because the circuit court consistently ruled that Appellants had to prove actual fraud to maintain an action. Appellants cite to *Miller v. Huntington & Ohio Bridge Co.*, 123 W.Va. 320, 15 S.E.2d 687 (1941), in support of their arguments.[12]

With respect to Appellants' argument that the circuit court consistently ruled that they had to prove actual fraud, Appellants have not identified the specific circuit court rulings of which they complain. Nor are we able to find such a finding in the circuit court's order granting Appellees' summary judgment motion. To the contrary, the circuit court, after reviewing and reciting the elements of both constructive and actual fraud as enunciated in *Miller*, found that Appellants had produced no evidence of either actual fraud or constructive fraud on the part of the Appellees in the process of acquiring office space. Specifically, the circuit court also concluded that Appellants had failed to prove constructive fraud because they made no showing that Appellees breached any legal or equita-

11. Even if legal advertisements had been required, any alleged deficiency in the process was essentially rendered moot by the large amount of media publicity covering the relocation of the Health Department facilities. Appellants were obviously aware of the relocation and thus, were not injured by any absence of legal advertisement.

12. As cited in *Miller*, " '[a]ctual fraud' is intentional fraud and consists in deception, intentionally practiced to induce another to part with property or to surrender some legal right and

which accomplishes the end designed." Syllabus, *Id.* " 'Constructive fraud' is a breach of legal or equitable duty which irrespective of moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interest, and neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud, whereas intent to deceive is an essential element of actual fraud, the presence or absence of such intent distinguishes actual from constructive fraud." *Id.*

ble duty that tended to deceive others, tended to violate public or private confidence, or tended to injure public trust. Accordingly, the circuit court found that there were no factual issues with respect to either actual or constructive fraud to be decided by a jury.

Additionally, regarding Appellants' argument that a genuine issue of material fact exists as to whether constructive fraud existed, we find no error on behalf of the circuit court on this issue. In their brief, Appellants point to allegations in their complaint as evidence of genuine issues of material fact:

"[t]he Appellants *have set forth multiple reasons in their complaint* why the transactions for the relocation of the Department of Health offices are *highly suspect,* including the price paid for the new facilities in contrast to the other facilities allegedly considered by the Appellee and their suitability, the fact that the Board of Health members wholly relied upon their executive director to arbitrarily assign worth to prospective properties when the board members didn't even know what the members meant or how they were produced and worse yet, for which there was no standard of compilation or interpretation. The numbers on Exhibit One are, in the strictest mathematical/scientific sense, **arbitrary.**" [Emphasis in original.] Further, the Appellants *have alleged* the existence of a conflict of interest between the successful "bidder" and the Appellee due to the relationship between the office of the city attorney and the ownership and representation of the corporation owning the selected property being a member of the law firm which represents the City of Clarksburg (Main Street Realty, Inc., represented by Young, Morgan & Cann, and owned by Mr. Carmine Cann, Esquire). (Emphasis added).

■ We have long held that "[s]ummary judgment cannot be defeated on the basis of factual assertions contained in the brief of the party opposing a motion for such judgment." Syl. Pt. 3, *Guthrie v. Northwestern Mutual Life Insurance Co.,* 158 W. Va. 1,208 S.E.2d 60 (1974). "[S]elf-serving assertions without factual support in the record will not defeat a motion for summary judgment."

*Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 61 n. 14, 459 S.E.2d 329, 338 n. 14 (1995)(*citing McCullough Oil, Inc. v. Rezek,* 176 W.Va. 638, 346 S.E.2d 788 (1986)). Rule 56(e) of the *West Virginia Rules of Civil Procedure* states in part:

"[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

W. Va. R. Civ. P. 56(e), in part (1998).

Appellants may not simply rest upon the mere allegations of their complaint in opposing a summary judgment motion. Rather, they must set forth specific facts showing that there is a genuine issue of material fact for trial. Further, Appellants must identify specific facts in the record and articulate the precise manner in which that evidence supports their claims. *See Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.,* 196 W.Va. 692, 699, 474 S.E.2d 872, 879 (1996).

Appellants also assert that the main genuine issue of material fact is "whether the [building] selection process was arbitrary or worse (constructive fraud)" in that the Board "did not have the discretion to abdicate its responsibility to another in making the decisions regarding relocation"; in that "the decision-making was ... conferred ... to an individual employee of the Board"; and in that "[t]he deliberation requirement-the duty-was absolutely not satisfied herein." However, the circuit court concluded, and we agree, that no legal authority exists to prohibit the Appellees from delegating tasks and duties to certain of its members in the furtherance of their objectives.

■ Generally, fraud is a question of fact to be determined by the jury from all the circumstances of the case. *Kessel v. Leavitt,* 204 W.Va. 95, 132 fn. 38, 511 S.E.2d

720, 757 fn. 38 (1998)(citing 8B Michie's Jur. *Fraud and Deceit* § 67, at 433 (1994)). However, we have held that "[t]he mere fact that a particular cause of action contains elements which typically raise a factual issue for jury determination does not automatically immunize the case from summary judgment. The plaintiff must still discharge his or her burden under West Virginia Rule of Civil Procedure 56(c) by demonstrating that a legitimate jury question, i.e. a genuine issue of material fact, is present." Syl. Pt. 1, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995).

■ The circuit court thoroughly and carefully reviewed the evidence and made the following determinations in its summary judgment order: Appellants failed to produce any evidence that the amount paid for the Toothman Rice building was in excess of the market value of the building or was so excessive as to constitute constructive fraud[13]; Appellants failed to show how the asserted conflict of interest disqualified the Toothman Rice building for lease by the Board; Appellants did not present any evidence showing that the facts were in dispute as to any issue it raised; Appellants cited no legal authority that would bar the Board from devising its own methods and procedures for the evalua-

tion of properties; Appellants essentially relied on argument and allegations to defeat the Board's motion for summary judgment; and finally, Appellants produced no evidence of fraud whatsoever, either actual or constructive. Based on the record before us, we find that the circuit court did not commit error in making such findings, and we find nothing in the record demonstrating that the circuit court's order should otherwise be reversed. Accordingly, we affirm the rulings of the circuit court below.

## IV.

## CONCLUSION

For the reasons stated herein, the circuit court's order of March 13, 2007, is hereby affirmed.

**Affirmed.**

---

**13.** "Where the question of the market value of the property is one on which reasonable minds may differ, the purchase thereof by a county court, at a price within the range of the differences of opinion as to its value, will not be set aside as constructively fraudulent on the grounds of excessiveness in the price paid." Syl. Pt. 7, *Miller v. Huntington & Ohio Bridge Co.,* 123 W.Va. 320, 15 S.E.2d 687.